SAN JUAN CELLULAR TELEPHONE COMPANY, etc., et al., Plaintiffs, Appellees,

v.

PUBLIC SERVICE COMMISSION OF PUERTO RICO, Defendant, Appellant.

No. 91–1980.

United States Court of Appeals, First Circuit.

Heard March 2, 1992.

Decided June 12, 1992.

---

Anabelle Rodriguez, Sol. Gen., with whom Sylvia Cancio Bigas, Asst. Sol. Gen., was on brief for defendant, appellant.

Patrick D. O'Neill with whom Martinez, Odell, Calabria & Sierra was on brief for plaintiffs, appellees.

Before BREYER, Chief Judge, FEINBERG,* Senior Circuit Judge, and CYR, Circuit Judge.

BREYER, Chief Judge.

The Federal Communications Commission licensed two companies—a private firm and a government-owned firm—to provide cellular telephone service in San Juan, Puerto Rico. Puerto Rico law permits the government-owned company to begin service without further authorization; it requires the privately owned company to obtain a permit from the Commonwealth. *See* 27 L.P.R.A. §§ 401–404, 410, 1001– 1111. The Puerto Rico Public Service Commission granted the private firm the necessary authorization, but it conditioned that authorization upon the company's paying a 3% (of gross revenue) *canon periódico*, which is a "periodic rate," 27 L.P.R.A. § 1111(b), or a "periodic fee," Velázquez Spanish and English Dictionary 136, 510 (new rev. ed. 1985). The result was that the private firm had to pay a charge that its government-owned competitor did not have to pay.

The private firm, San Juan Cellular Telephone Company, brought this lawsuit, asking the federal district court to declare the 3% "periodic fee" unlawful. The federal court granted this declaratory relief, for, in its view, federal statutes, read together with FCC regulations, pre-empt the local government's authority to impose such a discriminatory charge. *See* 47 U.S.C. §§ 151–52; *Cellular Communications Systems*, 86 F.C.C.2d 469, 503–05 (1981), *aff'd on reconsideration*, 89 F.C.C.2d 58, 95–96 (1982). The Commission now appeals.

The Commission raises only one claim on this appeal. It says that the court lacked subject matter jurisdiction. The Commission points to the Butler Act, a statute similar to the better known Tax Injunction Act. The Butler Act forbids the federal district court from

> restraining the assessment or collection of any tax imposed by the laws of Puerto Rico,

48 U.S.C. § 872, unless no "plain, speedy and efficient" remedy is available in the Commonwealth's courts, 28 U.S.C. § 1341 (Tax Injunction Act). *See Parker v. Agosto-Alicea*, 878 F.2d 557, 558–59 (1st Cir. 1989) (same exception applies under Butler Act). The Commission correctly notes that a declaratory judgment that the "periodic fee" is unlawful is equivalent to an injunction. *California v. Grace Brethren Church*, 457 U.S. 393, 411, 102 S.Ct. 2498, 2509, 73 L.Ed.2d 93 (1982) (Tax Injunction Act prohibits declaratory judgments as well as injunctions). And, it argues that

---

* Of the Second Circuit, sitting by designation.

the 3% "periodic fee" is, for federal tax injunction purposes, a "tax." *See In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17, 26 (1st Cir.1982) [hereinafter *In re Justices* ] (characterization as "fee" or "tax" a matter of federal law under Butler Act); *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir.1987) (same, for Tax Injunction Act). The Commission adds that the Commonwealth courts offer adequate remedies. *See* 13 L.P.R.A. § 261; *Carrier Corp. v. Perez*, 677 F.2d 162, 164 (1st Cir. 1982). And, it concludes that the Butler Act prohibits the federal court from issuing the declaratory judgment.

Like the district court, we reject the Commission's argument. For tax injunction purposes, the 3% "periodic fee" is not a "tax." Rather, it is the kind of charge that courts often have distinguished from a "tax" and have called, instead, a regulatory "fee." *See, e.g.*, cases cited in *Butler v. Maine Supreme Judicial Court*, 767 F.Supp. 17, 19 (D.Me.1991).

Courts have had to distinguish "taxes" from regulatory "fees" in a variety of statutory contexts. Yet, in doing so, they have analyzed the legal issues in similar ways. They have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other. The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. *See, e.g., National Cable Television Ass'n. v. United States*, 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1148–49, 39 L.Ed.2d 370 (1974) [hereinafter *National Cable* ]; *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 376 (3d Cir.1978); *Butler*, 767 F.Supp. at 19. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. *See New England Power Co. v. U.S. Nuclear Regulatory Commission*, 683 F.2d 12, 14 (1st Cir.1982). It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. *See, e.g., South Carolina ex rel. Tindal v. Block*, 717 F.2d 874, 887 (4th Cir.1983), *cert. denied*, 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984).

Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses. *See, e.g., Union Pacific Railroad Co. v. Public Utility Commission*, 899 F.2d 854, 856 (9th Cir. 1990); *In re Justices*, 695 F.2d at 27; *see also National Cable*, 415 U.S. at 343–44, 94 S.Ct. at 1150–51.

Courts facing cases that lie near the middle of this spectrum have tended (sometimes with minor differences reflecting the different statutes at issue) to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation. Thus, the Seventh Circuit has called a Wisconsin Department of Transportation charge upon trucks a "tax," because the charge was used to help pay for highway construction, a "general" type of public expenditure. *Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128, 132 (7th Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). The Second Circuit has called a city-assessed public utility "franchise fee" a "tax" because the money raised was treated as part of the city's "general revenue." *Keleher v. New England Tel. & Tel. Co.*, 947 F.2d 547, 549 (2d Cir.1991). And, the Third Circuit has held that a charge of 5% of gross revenues that a city assessed fire and burglar alarm companies was a "tax" for similar reasons. *Robinson Protective Alarm Co.*, 581 F.2d at 376.

On the other hand, the United States Supreme Court wrote, in 1884, that a statutory levy on shipowners of $.50 per passenger was not a tax because the revenue was used " 'to defray the expense of regulating immigration ... for the care of immigrants ... and for the general purposes and expense of carrying th[e immigration] act into effect.' " *Head Money Cases*, 112 U.S. 580, 590, 5 S.Ct. 247, 249, 28 L.Ed. 798 (1884) (quoting 22 Stat. 214). More recently, the Ninth Circuit has held that a Public Utilities Commission's assessment was a

"fee," not a "tax," because it helped "defray the cost of performing the regulatory duties imposed" on the Commission. *Union Pacific Railroad Co.*, 899 F.2d at 856. The Fifth Circuit has held that a Nuclear Regulatory Commission's charge was a "fee," not a tax, when it helped to pay the costs of "environmental reviews," "uncontested hearings," and "administrative and technical support" for licensing procedures. *Mississippi Power & Light Co. v. U.S. Nuclear Regulatory Commission*, 601 F.2d 223, 228, 231–32 (5th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1066, 62 L.Ed.2d 787 (1980). The Seventh Circuit has commented that a Wisconsin Department of Transportation charge upon trucks was a "fee," not a "tax," when the revenues raised by that particular charge helped pay for efforts to "identify authorized vehicles for regulatory purposes." *Schneider Transport*, 657 F.2d at 132 (citing *Wisconsin v. Yellow Freight System, Inc.*, 96 Wis.2d 484, 292 N.W.2d 361 (1980), *aff'd*, 101 Wis.2d 142, 303 N.W.2d 834 (1981)). And, the Fourth Circuit has found that a levy on milk sales which, in part, funded a milk price-support program was a regulatory fee. *Tindal*, 717 F.2d at 887.

Given this precedent, the facts of this case indicate that the "periodic fee" is a regulatory "fee," not a "tax." A regulatory agency assesses the fee. 27 L.P.R.A. § 1111(b) (Commission "may ... demand a periodic rate ... and prescribe the manner and time that the payments shall be made."). The agency places the money in a special fund. *Id.* ("Special Fund" distinct from other funds on "the books of the Secretary of the Treasury" and "separate from any other funds received by the ... Commission"). The money is not used for a general purpose but rather to

> defray[ ] the expenses generated in specialized investigations and studies, for the hiring of professional and expert services and the acquisition of the equipment needed for the operations provided by law for the Commission.

*Id.* These three circumstances, taken together, place the 3% charge close to the "fee" end of the spectrum. *Compare Head Money Cases*, 112 U.S. at 594–96, 5

S.Ct. at 251–52; *Union Pacific Railroad Co.*, 899 F.2d at 856–61; *Mississippi Power & Light Co.*, 601 F.2d at 227–29.

The Commission makes three arguments to the contrary. First, it says that the statute allows the Commission to use the money not just to cover expenses "due to cellular communications providers' regulation," but, rather, "to defray special nonrecurrent expenses" of the Commission, specifically those "generated" in the activities described in the statutory language we have quoted. This, the Commission says, makes the "periodic fee" a tax under a line of cases following the Supreme Court's decision in *National Cable*. The Commission may mean to rely on a statement, in *National Cable*, that a "fee," unlike a "tax," helps pay for "a benefit on the applicant, not shared by other members of society," and that *"the measure of the authorized fee"* is *" 'value to the recipient.' " National Cable*, 415 U.S. at 341, 342–43, 94 S.Ct. at 1149–50 (emphasis added). This language (taken out of context) might seem to require a holding that the Commission's charge, levied upon a regulated firm, is a "tax" insofar as the resulting revenues pay for any Commission expenses other than services provided *that particular* firm. In other words, a charge of, say, $.50 per subscriber, raising from Firm A, say $50,000, would amount to a "tax" to the extent that licensing expenses for Firm A alone amounted to less than $50,000.

If that is the Commission's argument, it is not convincing. For one thing, the *National Cable* case focused upon a particular statute not at issue here. That statute limited the FCC's powers to assess fees to those fees that, in the statute's words, provided *" 'value to the recipient.' " National Cable*, 415 U.S. at 342, 94 S.Ct. at 1149 (emphasis added); *see also Federal Power Commission v. New England Power Co.*, 415 U.S. 345, 94 S.Ct. 1151, 39 L.Ed.2d 383 (1974) (interpreting same statute). Deciding whether (or to what extent) a particular fee provides such individual value could make sense in the context of such a statute.

Here, however, we are dealing with a very different statute, a "tax injunction"

statute, which has as its objective preventing a taxpayer from "throw[ing]" state "tax administration ... into disarray" as the taxpayer tries to "escape ... ordinary procedural requirements" by going to federal court for an injunction, perhaps thereby "damag[ing]" the "State's budget" and "shift[ing] to the State ... the risk of taxpayer insolvency." *Rosewell v. La Salle National Bank,* 450 U.S. 503, 527, 101 S.Ct. 1221, 1236, 67 L.Ed.2d 464 (1981) (quoting *Perez v. Ledesma,* 401 U.S. 82, 128 n. 17, 91 S.Ct. 674, 699 n. 17, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part and dissenting in part)); *see also In re Justices,* 695 F.2d at 26–27 (same concerns in Butler Act). Whether a particular agency charge defrays the administrative costs of regulating a single regulated firm or a class of such firms has little, or nothing, to do with this problem. Hence, the Court's limiting language in *National Cable* is irrelevant here.

For another thing, the courts have read the Supreme Court's language in *National Cable* as limited to its specific statutory context. They have not viewed it as overruling the *Head Money Cases. See, e.g., Union Pacific Railroad,* 899 F.2d at 861 (*National Cable* Court "recognized that it was not announcing universal definitions of 'tax' and 'fee'" but was "simply determining the meaning of these terms in a particular context quite different from that presented in the *Head Money Cases*"). And, they have continued to consider charges used by regulatory agencies to defray a general class of regulatory costs as "regulatory fees." *See Tindal,* 717 F.2d at 887; *see also Schneider Transport,* 657 F.2d at 132. Indeed, some courts have read the Court's language, even in the context of the same statute, as not demanding quite the fine parsing and matching of fee and expenditure for which the Commission may now hope. *See, e.g., Mississippi Power & Light Co.,* 601 F.2d at 232.

Second, the Commission points to a provision of the statute that says:

> The Commission shall submit to the Budget and Management Office a budget of expenses chargeable to said Special Fund, annually, which must be approved before the resources deposited therein are used.

27 L.P.R.A. § 1111(b). The Commission argues that this approval requirement means that the Commonwealth might use the money for general public purposes, rather than for specific regulatory ones. The short, conclusive answer to this claim is that the statute nowhere says the Budget and Management Office can approve an expenditure for anything other than the regulatory purposes described in the statute. The point of the review, as far as the record reveals, is to make certain that the Commission spends the money as the statute directs and not in some other way.

Finally, the Commission points out that the statute says that, after five years, the "fees collected," but not used for the special regulation-related statutory purposes, will be deposited in the "General Fund of the Commonwealth of Puerto Rico." 27 L.P.R.A. § 1111(b). Perhaps this instruction would make a difference were there some evidence in the record that large amounts of the revenue the Commission obtains would end up in that general fund. *American Trucking Ass'ns., Inc. v. O'Neill,* 522 F.Supp. 49, 53–54 (D.Conn. 1981) ("tax," not "fee," where truck registration fee raised $10 million to cover regulatory costs of $90,000, a "gross disproportion"). But, nothing in the record before us, or in the statute, suggests that the Commission will fail to spend most, or all, the revenue raised for the specific statutory objectives, particularly since the legislature enacted the statute to help the Commission deal with the problems the legislature had created through "increase[s in] the body's jurisdiction" in "regulat[ing] ... public-service enterprises" with "practically unaltered ... appropriated resources." Legislature of Puerto Rico, S. Bill 625, H. Bill 748 (Statement of Motives), 11th Leg., 2d Sess. (1989).

For these reasons, the judgment of the district court is

*Affirmed.*