Charles R. HEXOM, Plaintiff–
Appellant,

v.

OREGON DEPARTMENT OF TRANS-
PORTATION; Grace Crunican, Di-
rector of the Oregon Department of
Transportation, Defendants–Appel-
lees.

No. 98–35500.

United States Court of Appeals,
Ninth Circuit.

Submitted April 16, 1999.[1]

Decided May 18, 1999.

Kent B. Thurber, Davis Wright Tre-
maine, Portland, Oregon, for the plaintiff-
appellant.

Richard D. Wasserman, Assistant Attor-
ney General, Salem, Oregon, for the defen-
dants-appellees.

Before: D.W. NELSON,
FERNANDEZ and FLETCHER, Circuit
Judges.

FERNANDEZ, Circuit Judge:

Charles R. Hexom filed this action
against the Oregon Department of Trans-
portation[2] for the purpose of enjoining the
DOT from imposing a $4 fee for the issu-
ance of or renewal of disabled person
parking permits in the form of individual
placards or decals. *See* Or.Rev.Stat.
§§ 811.602, 811.640 (1998). He asserted
that the fee violated the provisions of the
Americans with Disabilities Act. *See* 42
U.S.C. §§ 12101–12213. The district court

---

1. The panel unanimously finds this case suit-
able for decision without oral argument.
Fed. R.App. P. 34(a)(2).

2. He also sued its director, Grace Crunican,
in her individual and official capacities.
What we hold as to the DOT applies to her as
well.

determined that the fee was a tax. It, therefore, found that the Tax Injunction Act stripped it of jurisdiction. *See* 28 U.S.C. § 1341. Thus, it dismissed the complaint. *See* Fed.R.Civ.P. 12(b)(1). Hexom appealed. We reverse and remand.

## BACKGROUND

Oregon has provided special parking places and privileges for disabled persons. It also has provided for the issuance of special license plates and of individual placards, which are portable and which can, therefore, be used on any car. The license plates and placards enable policing of parking space usage in order to assure that the spaces will not be used by persons who have no need for them. *See* Or.Rev. Stat. §§ 811.615—811.620 (1998). The placard can be used in the vehicle of a person who is not disabled when he is transporting a disabled person and, thus, adds flexibility for the benefit of disabled people. *See* Or.Rev.Stat. § 811.625 (1998).

Not surprisingly, the placard program does impose some costs on the State of Oregon and, more particularly, on the DOT. Oregon has chosen to defray those costs by charging a fee of $4 for the issuance of the placard. *See* Or.Rev.Stat. § 811.640 (1998). That fee results in the issuance of a permit that is good for four years before it needs to be renewed. *See* Or.Rev.Stat. §§ 807.130, 807.400, 811.605 (1998). In explaining the need for the fee to the legislature, the then administrator of the DOT told that body that the program would create "a need for two additional permanent positions at the division" as well as a number of temporary ones. He indicated that "[t]he $4 fee will cover the cost of the program." The legislature agreed.

It is the imposition of that fee which has generated this litigation because Hexom asserts that no fee whatsoever can be charged. The district court, however, never reached the merits of that claim. It

decided, instead, that it lacked subject matter jurisdiction to do so. This appeal followed.

## STANDARD OF REVIEW

 "The existence of subject matter jurisdiction is a question of law reviewed de novo." *Bidart Bros. v. California Apple Comm'n,* 73 F.3d 925, 928 (9th Cir. 1996). It is the burden of plaintiffs to persuade the federal courts that subject matter jurisdiction does exist. *See Thornhill Publ'g Co., Inc. v. General Tel. & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir.1979).

## JURISDICTION

We have jurisdiction pursuant to 28 U.S.C. § 1291. What we must decide in this case is whether the district court had jurisdiction.

 The district court's jurisdiction turns on the application of the TIA, 28 U.S.C. § 1341, which sententiously provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Nothing could be more direct than that simple imperative sentence, but we must ask, as others have before us, what exactly is a tax?[3] The answer, unfortunately, is considerably longer than either § 1341 itself or the question.

 Not every exaction by state authorities is a tax. That much is certain. Congress did not intend to remove federal court jurisdiction whenever some state revenue might be affected somehow. Rather, it sought to avoid interference that would "threaten the flow of general revenue to or the budgets of state governments." *Bidart,* 73 F.3d at 930. That interference could "damage . . . the State's budget, and perhaps . . . shift to the State

---

**3.** The district court determined that Oregon does provide a "plain, speedy and efficient remedy," and Hexom does not question that determination on appeal.

... the risk of taxpayer insolvency." *Id.* (internal quotation marks and citations omitted). Thus, we have "appropriately distinguished between assessments that if enjoined would threaten the flow of central revenues of state governments and assessments that are not so critical to general state functions." *Id.*

We have had occasion to distinguish mere fees from taxes. We touched on that distinction in *Union Pac. R.R. Co. v. Public Util. Comm'n,* 899 F.2d 854 (9th Cir. 1990). In that case, we were faced with a levy that was placed upon railroad corporations. It was contended that the levy constituted a discriminatory tax. *See id.* at 855–56. We said: "The Oregon levy is designed to recoup the costs of a regulatory program from members of the industry regulated, rather than to raise general revenues...." *Id.* at 859. We then determined that the levy was not a tax. *See id.* at 861. That commonsense approach militates for a determination that the $4 fee in question here is not a tax either, but courts have applied a somewhat more elaborate form of reasoning to the TIA.

The decision that has become a leading case in this area was issued by the First Circuit a few years ago. *See San Juan Cellular Tel. Co. v. Public Serv. Comm'n,* 967 F.2d 683, 685 (1st Cir.1992). That case applied a statute much like the TIA. The question before the court was whether a periodic fee imposed by Puerto Rico was a tax. If it was, the district court was prohibited from considering an action which challenged the fee. *See id.* at 684–85. The court pointed out that:

> Courts have had to distinguish "taxes" from regulatory "fees" in a variety of statutory contexts. Yet, in doing so, they have analyzed the legal issues in similar ways. They have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other. The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.
>
> Courts facing cases that lie near the middle of this spectrum have tended (sometimes with minor differences reflecting the different statutes at issue) to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation.

*Id.* at 685 (citations omitted). Based upon that framework, the court determined that the fee it was dealing with was not a tax. *See id.* at 686. It pointed out that the money was not for general governmental purposes, that the funds were actually for use by a particular agency, and that there was little reason to think that the money would ultimately be used for general fund purposes. *See id.* at 686–87.

First Circuit cases since *San Juan Cellular* have reached similar conclusions. *See Trailer Marine Transp. Corp. v. Rivera Vazquez,* 977 F.2d 1, 6 (1st Cir.1992) (where a fee was directed to a special fund for special purposes, and an injunction would pose "no threat to the central stream of tax revenue," it was not a tax); *cf. Cumberland Farms, Inc. v. Tax Assessor,* 116 F.3d 943, 946–47 (1st Cir.1997) (where collection of a levy was assigned to the state tax assessor and the legislature called the charge a general revenue raising device, it was a tax). Other courts have agreed with the First Circuit's approach. *See Marcus v. Kansas Dep't of Revenue,* 170 F.3d 1305, 1311 (10th Cir.1999); *Collins Holding Corp. v. Jasper County,* 123 F.3d 797, 800 (4th Cir.1997); *Hager v. City of West Peoria,* 84 F.3d 865, 870–72 (7th

Cir.1996); *cf. Miami Herald Publ'g Co. v. City of Hallandale,* 734 F.2d 666, 670–71 (11th Cir.1984).

We, too, have agreed with the First Circuit's approach. In *Bidart,* 73 F.3d at 930, we first set forth the language from San Juan Cellular that we have already quoted in this opinion. We then distilled the essence of the *San Juan Cellular* approach to cases which are at neither pole of the spectrum. We said:

> The *San Juan Cellular* test calls for the consideration of three primary factors in determining whether an assessment is a tax: (1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed.

*Id.* at 931. We applied those standards and determined that the levies in question were not taxes because they were imposed by a non-legislative body, were segregated from California's general funds, and were not spent for the benefit of the public at large. *See id.* at 933.

Before turning to consider the placard fee, we pause to emphasize that the cases, *Bidart* among them, take a practical and sensible approach. They do not apply a set of rigid rules or elements and then reach a mechanical conclusion. In *Bidart* itself, we noted that when we are considering the more elusive cases, which are nearer to the midpoint between the paradigmatic tax and the paradigmatic regulatory fee, the factors we distilled there were simply the primary ones. *See id.* at 931.

With those principles in hand, we turn to the assessment in question here. At first blush, the assessment seems quite close to the regulatory fee pole. Actually, it is not very regulatory at all because its true purpose is simply to cover the costs of issuing the permit, although it does have a kind of regulatory goal—it surely helps to assure that only the proper people will use disabled person parking places. But as used in this area, regulatory fee is simply a phrase used to juxtapose tax and non-tax assessments. The courts do not intend that the phrase be taken extremely literally. As we said in *Bidart,* 73 F.3d at 933, "the ultimate question remains" whether it is a tax or something else.

In fact, *Bidart* itself pointed out that the primary function of the Apple Commission was "to promote the purchase of California Apples." *Id.* at 933. The Commission did do other things, but we were not concerned about whether they could be called regulation. As we said, "[r]egardless of the labels placed on the Commission's duties and functions, its assessments are not 'taxes' within the meaning of the TIA." *Id.* Other courts, which accept the *San Juan Cellular* approach, have noted that some fees are neither true classic taxes nor used to "regulate conduct in the usual sense of that term." *Trailer Marine,* 977 F.2d at 5. They, like *Bidart,* have pointed to the special dedication of the fee, which distinguishes it from a tax. *See id.* at 6. In other contexts, courts have referred to "[u]ser fees [which] are payments given in return for a government-provided benefit." *United States v. City of Huntington,* 999 F.2d 71, 74 (4th Cir.1993). That locution was referred to in *Marcus,* 170 F.3d 1305, 1311, but the court went on to distinguish a disabled person placard charge from a tax, and to place it in the fee category by holding that "[n]ot only are the charges expressly linked to a specific regulatory scheme but also the monies collected pursuant to the charge are used to defray the expenses associated with administering the scheme. As such, we conclude that the assessment constitutes a fee for purposes of the Tax Injunction Act." *Id.* at 1312.

Perhaps the word "regulatory" tends to misdirect attention from the fact that the pole opposite the "classic tax" is really something more like the "classic non-tax," and perhaps different rules and factors could be used to address each different type of non-tax. However, rather than multiplying tests and designations, we will not rechristen the "regulatory fee" pole at

this time. That should not prevent us from observing that from our coign of vantage nothing about this fee looks like a tax. Its minimal size—$4 dollars every four years—does not make it look like a general revenue raising device. That is especially true because it is designated to pay the costs of conferring a particular benefit on a particular group of people. It does not look anything like an emanation from the tax pole. Let us look, however, at the primary factors that *Bidart* distilled for use when we are dealing with a mid-point case.

Here it is true that the fee was imposed by the legislature. *See* Or.Rev.Stat. § 811.640 (1998). That gives it something of a tax aura. However, the direct recipient of the amount is not a tax collector, or even the State's general fund. It is the DOT, which told the legislature that it needed that amount to fund the special program of issuing the disabled person permits. Next, the fee is imposed on a very limited group of people—those who apply for disabled person parking permits, including placards. In that, the fee bears very little resemblance to a tax. The last of the three factors looks to the purpose and use of the fee. *Bidart*, 73 F.3d at 932. Because that is the consideration upon which the DOT led the district court astray, we will say a few additional words about it.

DOT argues that the unique system used in handling and accounting for the fee means that it must be treated as a tax. It refers to the fact that when the fee is collected it must first be deposited in DOT's Driver and Motor Vehicles Suspense Account along with a multitude of other fees. *See* Or.Rev.Stat. §§ 802.100(1), 802.110(1) (1998). From that account of commingled funds, any excess is transferred to DOT's Driver and Motor Vehicle Services Administrative Account once a month, where it is, in turn, commingled with other money. *See* Or. Rev.Stat. §§ 802.100(2), 802.110(4) (1998). Thence, surplus is transferred to the State Highway Fund once a month. *See* Or.Rev. Stat. §§ 802.100(2), 802.110(5) (1998). As

a result, says DOT, some part of this $4 fee might find its way into the State Highway Fund, which is used to benefit the public in general. Thus, it says, the fee should be dubbed a tax, or, at the very least, Hexom has not shown that it is not one. We do not agree. Were we to do so, we would be falling into the mechanical trap that we, and other courts, have heretofore avoided.

The question, in the long run, is not simply where the money is deposited at some point; it is what the purpose or use of the assessment truly is. As the Seventh Circuit has pointed out, "[r]ather than a question solely of *where* the money goes, the issue is *why* the money is taken." *Hager*, 84 F.3d at 870–71. In that case, the money from a permit fee was deposited in a city's general fund, but that fee "reasonably estimate[d] the cost imposed by the person required to pay the fee" and was "better seen as a user fee ... not a tax." *Id.* at 871–72. We also reflected upon that approach in *Bidart*, 73 F.3d at 933, when we noted that even monies paid into the general fund of the treasury are not necessarily taxes. *See also Marcus*, 170 F.3d at 1311–12.

In *Thrope v. Ohio*, 19 F.Supp.2d 816, 823 (S.D.Ohio 1998), the court took the same view of a disabled person placard expense when it said, "the nominal surcharge for the parking placard appears more like a user fee designed to cover the State's costs of issuing the placards." It was not deterred from that holding by the fact that the funds were deposited in the state treasury and allocated to the general fund of the Bureau of Motor Vehicles. *See id.* Nor should we be diverted by DOT's accounting argument.

The Oregon legislature denominated this exceedingly small charge—from the user's standpoint it averaged about $1 per year—as a fee. Of course, that designation is not conclusive; neither should we ignore it. Moreover, the assessment was designed to cover the exact costs of the service in question, that is the cost of issuing the

placard or other permit. There simply is no reason to think that the fee was so ill-designed, or that its true purpose was so cleverly disguised, that it really was a revenue raising measure.

In other words, this is not a case where it is apparent that the amount assessed is vastly in excess of the cost of the special program itself. *See American Trucking Ass'ns, Inc. v. O'Neill,* 522 F.Supp. 49, 53–54 (D.Conn.1981). Nor is it like the assessments considered in district court cases where a disabled person parking permit fee was almost unabashedly designed to raise much more revenue than the cost of the program itself would justify. *See Hedgepeth v. Tennessee,* 33 F.Supp.2d 668, 672 (W.D.Tenn.1998) (where $20.50 assessment for a placard was for the purpose of raising general revenue unrelated to program costs, it was a tax); *Lussier v. Florida, Dep't. of Highway Safety & Motor Vehicles,* 972 F.Supp. 1412, 1420–21 (M.D.Fla.1997) (most of the disabled person parking permit fee was not used to defray administration expense and was, therefore, a tax; the administrative expense portion was not a tax); *Rendon v. Florida,* 930 F.Supp. 601, 604–05 (S.D.Fla.1996) (finding disabled parking permit fee to be a tax where the $15.00 surcharge was not assessed for regulatory reason and bore no relationship to cost of regulatory program).

In short, DOT explained to the legislature that the actual cost of the program would be $4 per permit and the legislature accepted that. We find that "nothing in the record before us, or in the statute, suggests that the [DOT] will fail to spend most, or all, the revenue raised for the specific statutory objectives...." *San Juan Cellular,* 967 F.2d at 687; *see also Marcus,* 170 F.3d at 1312.

## CONCLUSION

Whether we consider the gestalt of the placard fee or consider it by using the separate elements or parts outlined in *Bidart,* we must reach the same conclusion. The fee is not designed to raise revenue, and enjoining its collection will not "threat-en the flow of central revenues" of Oregon's government. *Bidart,* 73 F.3d at 930. It is not at all "critical to general state functions." *Id.* It is, instead, designed to pay for the costs of a special program. In fine, it is not a tax, and this action is not precluded by the TIA. The district court did have jurisdiction.

REVERSED and REMANDED.