Rick LAVIS, Timothy Lawless, Steve May, Thomas Rice, Plaintiffs,

v.

Betsey BAYLESS, as Secretary of State of The State of Arizona, acting in her official capacity, and Carol Springer, as Treasurer of the State of Arizona, acting in her official capacity, Defendants,

Citizens Clean Elections Commission, Intervenor–Defendant,

Arizonans For Clean Elections, Intervenor–Defendant.

No. 99–CV–1627.

United States District Court, D. Arizona.

March 16, 2001.

Patrick Gerard Byrne, Snell & Wilmer LLP, Phoenix, AZ, William H. Mellor, Clint Bolick, Scott G. Bullock, Institute for Justice, Washington, DC, for plaintiffs.

Thomas I. McClory, Office of the Attorney General, Consumer Protection & Advocacy Section, Phoenix, AZ, for defendants.

### ORDER

ZILLY, District Judge.

This matter comes before the Court on Citizens Clean Elections Commission's Motion to Dismiss for Lack of Subject Matter Jurisdiction, docket no. 37. The Court enters the following ORDER.

#### BACKGROUND

Plaintiff complains that the Arizona Citizen's Clean Election Act (the Act) violates the First and Fourteenth Amendments by compelling citizens to make political contributions. Complaint ¶ 1. Plaintiff has filed this lawsuit pursuant to 42 U.S.C. § 1983 and seeks relief under 42 U.S.C §§ 2201, 2202, and 1988. Plaintiff seeks declaratory and injunctive relief.

Plaintiffs are all residents of Maricopa County. Complaint ¶ 5–8. Plaintiffs Lavis and Lawless are both registered lobbyists who are subject to fees imposed by § 16–944 of the Act. Complaint ¶ 17–20. Plaintiff's May and Rice both received traffic fines. The Act imposes a ten percent surcharge on all civil and criminal fines. § 16–954(C).

Defendant Bayless is the Secretary of State. *Id.* ¶ 9. The Secretary of State is required collect an annual fee imposed on registered lobbyists under the Act. A.R.S. § 16–944. Defendant Springer is the State Treasurer. Complaint ¶ 10. The State Treasurer is responsible for administering the Act. A.R.S. § 16–949.

The Act was the result of a citizen initiative which was approved by Arizona voters on November 3, 1998. Arizonans for Clean Elections (ACE) was the primary advocacy group sponsoring the Act. ACE moved to intervene in this lawsuit as a defendant. The Court granted the motion finding that ACE has a significant protectable interest that may be impaired by the disposition of this action in its absence and that representation by the existing defendants may be inadequate. *Order Granting Motion to Intervene,* doc. no. 21. The Court also granted a motion allowing the Citizens Elections Commission (the Commission) to intervene as a defendant.

The Commission has moved to dismiss for lack of jurisdiction over the subject matter, docket no. 37.[1] The Commission alleges that the plaintiffs are barred by the federal Tax Injunction Act, 28 U.S.C. § 1341, because this litigation challenges a state tax. The parties agree that there are no issues of fact and that the matter can be decided as a matter of law.

---

1. All other defendants have joined the motion to dismiss for lack of jurisdiction. *See* Defendant's Memorandum in Support of Motion for Summary Judgment, doc. no. 36.

## DISCUSSION

■ The existence of subject matter jurisdiction is a question of law. *Hexom v. Oregon Dept. of Transportation,* 177 F.3d 1134, 1135 (9th Cir.1999). The plaintiffs have the burden to establish subject matter jurisdiction. In this case subject matter jurisdiction turns on the application of the Tax Injunction Act, 28 U.S.C. § 1341.

■ The Tax Injunction Act (TIA) provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The primary purpose of the TIA is to limit federal court interference with state revenue collection procedures. *Ashton v. Cory,* 780 F.2d 816 (9th Cir.1986). The TIA requires taxpayers to proceed to state court to challenge disputed state taxes. In this case plaintiffs challenge the constitutionality of the Arizona Act.

The definition of the term "tax under state law" as used in § 1341 is a matter of federal law. *Butler v. State of Maine Supreme Judicial Court,* 767 F.Supp. 17, 19 (D.Me.1991); *Crane v. Commissioner of Department of Agriculture, Food and Rural Resources,* 602 F.Supp. 280, 282 (D.Me. 1985). Federal courts broadly construe the TIA to avoid even an indirect restraint on state taxes. *Jerron West Inc., v. State of California State Board of Equalization,* 129 F.3d 1334, 1337–38 (9th Cir.1997).

■ The TIA has its roots in fundamental principles of federalism. *See Rosewell v. LaSalle Nat. Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). Congress and the courts recognize the importance of a state's right to administer its own fiscal laws and to prevent serious

disruption to a state's taxing process. The very purpose of the TIA is to prevent taxpayers from using federal courts to raise questions of state and federal law challenging the validity of a particular tax. *See Osceola v. Florida Dept. of Revenue,* 893 F.2d 1231 (11th Cir.1990). As a result the TIA creates an absolute jurisdictional bar to hearing cases challenging state taxes.

The parties dispute whether the charge imposed on lobbyists is a tax and whether the ten percent surcharge imposed on civil and criminal fines is a tax.[2] *See* A.R.S. §§ 16–944, 16–954(C). Courts have distinguished "taxes" from regulatory "fees" in a variety of statutory contexts. *Hexom v. Oregon Dept. of Transportation,* 177 F.3d 1134, 1136 (9th Cir.1999) *citing San Juan Cellular Tel. Co. v. Public Serv. Comm'n,* 967 F.2d 683, 684–685 (1st Cir.1992). State assessments can fall within a spectrum that contains a tax at one end and a fee at the other end. *Id.* As explained by the *Hexom Court:*

> The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses. Courts facing cases that lie near the middle of this spectrum have tended (sometimes with minor differences reflecting the different statutes at

**2.** Plaintiffs do not claim that a plain, speedy, and efficient remedy is unavailable in a state court.

issue) to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulate companies or defrays the agency's costs of regulation.

*Id.*

■ The Court must consider three primary factors to consider whether a particular assessment is a tax: (1) the entity which imposes the tax; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the tax is imposed. *Bidart Brothers v. California Apple Commission*, 73 F.3d 925, 930 (9th Cir.1996). The characterization of a particular assessment as either a "fee" or a "tax" by the imposing body has no dispositive effect or talismanic significance. *Bidart*, 73 F.3d at 930; *See also Cumberland Farms Inc. v. Tax Assessor*, 116 F.3d 943, 946 (1st Cir.1997). Thus, the fact that the initiative labels these assessments as a "surcharge" and a "fee" does not determine the issue. Since the issue is whether these assessments are a "fee" or a "tax", they are referred to as assessments in this Order.

### 1. The Entity that Imposes the Assessment

An assessment imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative agency. *Bidart*, 73 F.3d at 931. In this case, the lobbyist fees and surcharges were imposed by the voters through a citizen initiative. Citizen initiatives have the same force and effect as acts passed by the Legislature. ARIZ. CONST. art. IV, Pt. 1, § 1(1).[3] The $100 fee and the ten percent surcharge are both set by the

statute. A.R.S. §§ 16–944, 16–954(C). The Commission has no independent authority to impose any tax or fee. Therefore, the first factor weighs in favor of finding that these assessments are a tax.

### 2. The Parties Upon Whom the Assessment is Imposed

An assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class. *Bidart*, 73 F.3d at 931. "However, an assessment upon a narrow class of parties can still be characterized as a tax under the TIA." *Id.* citing *Wright v. McClain*, 835 F.2d 143, 145 (6th Cir.1987) (fees imposed upon parolees for supervision and victim compensation were "taxes" under TIA); *Tramel v. Schrader*, 505 F.2d 1310, 1314–16 (5th Cir.1975) (assessments upon street residents for street improvements were "taxes" under TIA); *Indiana Waste Sys. Inc. v. County of Porter*, 787 F.Supp. 859, 864–65 (N.D.Ind.1992) (fee imposed on landfill owners was a "tax" under TIA); *Butler v. State of Maine Supreme Judicial Court*, 767 F.Supp. 17, 19 (D.Me.1991) (jury fee imposed on plaintiffs was a "tax" under TIA).

### A. Assessment on Civil and Criminal fines

The assessment on civil and criminal fines is analogous to the assessment in the cases cited by the Ninth Circuit in *Bidart*, 73 F.3d at 931. Anyone who pays a civil or criminal fine must also pay the assessment under A.R.S. § 16–945(C). This is analogous to the assessment in *Wright* upon all parolees. 835 F.2d at 145. It is also analogous to the assessment upon plaintiffs in *Butler*, 767 F.Supp. at 19. The assessment on civil and criminal fines is imposed upon a broad class of parties. The second factor weighs in favor of find-

---

**3.** Plaintiffs agree that the fees are imposed by a legislative body and not by the Clean Elec-

tions Commission. *Plaintiffs' Opposition*, doc. no. 45 at 4.

ing that this assessment is a tax as to plaintiffs May and Rice.

## B. Assessment on Lobbyists

This assessment is imposed on lobbyists except those representing public bodies and nonprofit entities not acting on behalf of trade association or other groupings of commercial or for-profit entities. This assessment is similar to the one in *Bidart* which imposed an assessment on a specialized industry group. 73 F.3d at 931–32. In that case, an assessment was imposed only on apple growers. *Id.* The court noted that "this narrow imposition weighs in favor of [the plaintiff], but like the nature of the entity imposing the assessment is not dispositive". *Id.* Similarly, this factor weighs in favor of the plaintiffs who are lobbyists.

## 3. The Ultimate Use of the Assessment

Where the first two factors are not dispositive, courts examining whether an assessment is a tax have tended to emphasize the revenue's ultimate use. *Bidart,* 73 F.3d at 931. Assessments that are treated as general revenues and paid into the state's general fund are taxes. An assessment placed in a special fund and used for a special purpose is less likely to be tax. "However, even assessments that are segregated from general revenues are 'taxes' under the TIA if expended to provide a general benefit to the public". *Id.*

The Ninth Circuit recently cautioned that courts should take a practical and sensible approach to determining whether an assessment is a tax. *Hexom v. Oregon Dept. of Transportation,* 177 F.3d at 1137. The court should not apply a mechanical and rigid approach "[Rather] the question in the long run, is not simply where the money is deposited at some point; it is what the purpose or use of the assessment

truly is ... rather than a question solely of *where* the money goes, the issue is *why* the money is taken." *Id.* at 1138.

An examination of the use and purpose of the assessment rather than a cursory review of where the revenue is placed or how the charge is referred to in the promulgating document is appropriate. *Valero Terrestrial Corp., v. Caffrey,* 205 F.3d 130, 135 (4th Cir.2000) *citing San Juan Cellular,* 967 F.2d at 685. The fact that revenue is placed in a special fund is not a sufficient reason on its own to warrant characterizing an assessment as a fee. If the revenue of the special fund is used to benefit the population at large then the segregation of the revenue to a special fund is immaterial. *Bidart,* 73 F.3d at 932.

In this case, the assessments that are imposed under the Act are ultimately used to fund political campaigns. The funds are segregated into the Clean Elections Fund as defined in A.R.S. § 16–961(E). Excess funds that are generated from the fees are returned to the general fund. A.R.S. § 16–954(D). No more than ten percent of the funds may be spent on administration and enforcement and no more than ten percent may be spent on voter education expenses. A.R.S. §§ 16–949(B) and (C). The lobbyist assessment produced $128,300 in revenue in 1999 and $8,200 in 2000 up to June. SOF. doc. no. 40, ¶ 16. The ten percent assessment generated $1,986,068 in 1999 and $2,273,553.00 through June of 2000. SOF, doc. no. 40, ¶ 20. These funds are not funds that are limited to paying for a government provided service.[4] The fees imposed under the act generate revenue for a public benefit.

The public benefit of the Act is declared in the initiative. A.R.S. § 16–940. The Act provides:

---

4. The lobbyist fee is not a filing fee or registration fee. Lobbyists pay a registration fee

of $25 under a different statute. A.R.S. 41–1232; SOF, doc. no. 40, ¶ 18.

The People of Arizona declare our intent to create a clean elections system that will improve the integrity of Arizona State government by diminishing the influence of special interest money, will encourage citizen participation in the political process, and will promote freedom of speech under the U.S. and Arizona Constitutions.

A.R.S. § 16–940(A).

The Act also identifies eight specific public problems that the Act is intended to alleviate. A.R.S. § 16–940(B). These include the high cost of running for state office which discourages qualified candidates, the extensive time required to raise funds which negatively affects public representation, and the costs to taxpayers as a result of subsidies and special privileges given to campaign contributors. *Id.*

"There is no serious question about the legitimacy of the government interests in regulating the financing of campaigns to prevent corruption and the appearance of corruption". *Nixon v. Shrink Missouri Gov't PAC,* 528 U.S. 377, 120 S.Ct. 897, 905, 145 L.Ed.2d 886 (2000). *See also Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (holding that public funding of political campaigns furthers an important and significant government interest). The fees imposed by this Act generate revenue that directly relates to the welfare of the citizens of Arizona. Interference would threaten the flow of state revenue for an important public purpose. *See Hexom,* 177 F.3d at 1134.

The assessments in this case resemble the charges imposed on parolees in *Wright* in that they both serve a public benefit. 835 F.2d at 145. Although those charges in *Wright* were earmarked for the Corrections Department, it was a tax because the purpose of defraying the costs of monitoring parolees and compensating victims directly related to the general welfare of the

citizens of the State. *Id.* The assessments in this case also resemble the fees imposed in *Schneider Transport, Inc. v. Cattanach,* 657 F.2d 128 (7th Cir.1981). In that case, vehicle registration fees earmarked for transportation purposes in a segregated fund were taxes under the TIA because of the general public benefit. *Id.* Additionally, the assessments in this case resemble those in *Indiana Waste Sys.,* 787 F.Supp. at 865. In that case, fees were imposed on landfill owners and were placed in segregated funds to be spent only on landfill administration and recycling. *Id.* That assessment was also considered a tax because of the public benefit generated by the funds. In this case, the funds are segregated into the Clean Elections Funds however, the funds are either spent on a general public benefit or are reallocated to the State's general fund.

## CONCLUSION

█ A consideration of all three factors compels the conclusion that the assessment on civil and criminal fines is a tax for purposes of the TIA. All three factors weigh in favor of finding the assessment to be a tax. These assessments are imposed for the purpose of raising revenue for the public benefit "to create a clean elections system that will improve the integrity of Arizona State." A.R.S. 16–940(A).

█ Although the assessment imposed on lobbyists is imposed on a narrow class, the purpose of the assessment is also to raise revenue for an important public benefit. The Court must broadly construe the TIA to prevent even indirect interference with a state's revenue flow. This Court lacks subject matter jurisdiction over the dispute. There is an alternative remedy available to the parties through a state forum which is subject to eventual review by the United States Supreme Court. *Cumberland Farms, Inc.,* 116 F.3d at 947. Arizona state courts offer a plain, speedy and efficient remedy for constitutional

challenges to the Act. *See Citizens Clean Elections Commission v. Myers*, 196 Ariz. 516, 1 P.3d 706 (2000) (addressing other constitutional challenges to the Citizens Clean Elections Act). This Court has concluded that the assessments imposed by the Act are taxes for the sole purpose of determining subject matter jurisdiction. The term tax is defined for purposes of subject matter jurisdiction under federal law and it is a term that is construed broadly. The decision that these assessments are a tax under the TIA has no preclusive effect on a state court's determination for the purposes of deciding the merits of the claims. Defendant Citizens Election Committee has argued, in support of its motion for summary judgment, that the assessments are a tax entitled to a deferential standard of review and that the fee is not an illegal flat tax. *See* doc. no. 39 at 6, 11. These issues have not been resolved by this Court.

The Court GRANTS Citizens Clean Elections Commission's motion to dismiss for lack of subject matter jurisdiction.

IT IS SO ORDERED.