United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 11, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

---

No. 02-30589

---

DENISE WASHINGTON, individually and on behalf of others similarly situated; ANDRY & ANDRY LLC, individually and on behalf of others similarly situated; and ISABELLE MONTELEPRE, individually and on behalf of others similarly situated,

Plaintiffs-Appellants,

VERSUS

LINEBARGER, GOGGAN, BLAIR, PENA & SAMPSON, LLP, formerly known as Heard, Linebarger, Graham, Goggan, Blair, Pena & Sampson, LLP, UNITED GOVERNMENTAL SERVICES OF LOUISIANA, INC., and THE CITY OF NEW ORLEANS,

Defendants-Appellees.

---

Appeal from the United States District Court
For the Eastern District of Louisiana, New Orleans

---

Before EMILIO M. GARZA and DeMOSS, Circuit Judges, and DUVAL,[1] District Judge.

DeMOSS, Circuit Judge

Denise Washington, Andry & Andry LLC, and Isabelle Montelepre ("Appellants"), individually and on behalf of others similarly

---

[1] District Judge of the Eastern District of Louisiana, sitting by designation.

situated, commenced this action in the United States District Court for the Eastern District of Louisiana against Linebarger, Goggan, Blair, Pena & Sampson, LLP, formerly known as Heard, Linebarger, Graham, Goggan, Blair, Pena & Sampson, LLP, United Governmental Services of Louisiana, Inc., and The City of New Orleans ("Appellees"), challenging the constitutionality of a 1998 City of New Orleans ordinance authorizing the collection of delinquent *ad valorem* taxes through private parties and assessing an additional thirty percent penalty for collection costs. Code City of New Orleans § 150-46.3, Ord. No. 18637. In 2002, this ordinance was amended by Ordinance No. 020556, which provided a "legal mechanism to challenge the imposition of collection penalties by paying such penalties under protest . . . ."

The Appellants are putative class members who represent different classes of current or past owners of property for which *ad valorem* taxes were delinquent. The Appellants do not challenge the constitutionality of the assessment of the underlying *ad valorem* taxes but rather the City's imposition of an additional thirty percent collection penalty. The Appellees are The City of New Orleans along with the law firm and the collection agency who contracted with The City of New Orleans to collect delinquent *ad valorem* taxes, penalties, and interest on behalf of the City. In exchange for their services the law firm and collection agency received thirty percent of the delinquent taxes, penalties, and interest they actually collected.

Appellees filed a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure arguing that the Tax Injunction Act of 1937, 28 U.S.C. § 1341, prevented the court from hearing the case. Appellants filed an opposition. On May 14, 2002, the

district issued an Order and Reasons dismissing the case for lack of jurisdiction due to the Tax Injunction Act.

Appellants now appeal the Order of the district court dismissing the case. Appellants claim that the penalty is not a "tax" but rather a fee and therefore the Tax Injunction Act does not apply. Appellants also argue that there was no remedy available to them in state court until the ordinance was amended in 2002 and it appears Appellants argue that there remains no remedy available in state court despite the amendment and therefore the Tax Injunction Act does not bar jurisdiction in the federal district court. Appellees argue that the penalty is a tax and remedies are available in the state system for all Appellants and therefore the district court was correct in dismissing the case.

We agree with the district court that the Tax Injunction Act prevents the federal district court from hearing this challenge to The City of New Orleans's ordinance and therefore affirm the district court's granting of Appellees' motion to dismiss.

Whether the district court was prevented from exercising jurisdiction over the case because of the Tax Injunction Act is a question of subject matter jurisdiction which we review *de novo*. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The Tax Injunction Act states: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. According to the Supreme Court, this statutory text should be interpreted to advance its purpose of "confin[ing] federal-court intervention in state government . . . ." *Ark. v. Farm Credit Servs. of Cent.*

3

*Ark.*, 520 U.S. 821, 826-827 (1997) (citations omitted).  We have stated that the statute "is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems."  *United Gas and Pipeline Co. v. Whitman*, 595 F.2d 323, 326 (5th Cir. 1979).

A "bifurcated analysis" is used to determine whether the Tax Injunction Act applies.  *Home Builders Ass'n of Miss.*, 143 F.3d at 1010.  First, it must be determined whether the ordinance imposes a tax or a regulatory fee.  *Id*.  If the imposition is a fee, then the Tax Injunction Act does not apply and jurisdiction may be appropriate.  *Id*.  Second, even if the ordinance imposes a tax, the federal district court may still have jurisdiction if the state does not provide a plain, speedy and efficient remedy. *Id*.

First, Appellants argue that the penalty is more like a regulatory fee than a tax.  We have held that the distinction between a tax and a fee is "a spectrum with the paradigmatic fee at one end and the paradigmatic tax at the other."  *Neinast v. Texas*, 217 F.3d 275, 278 (5th Cir. 2000) (citation omitted). Accordingly, we agree with the district court for the reasons stated in its Order, that the challenged penalty "is inexorably tied to the tax collection itself, which 'sustains the essential flow of revenue to the government.'" District Court Order and Reasons, 3-4 (citing *Home Builders Ass'n of Miss.*, 143 F.3d at 1011.).  Moreover, this Circuit has held that federal district courts are prohibited from deciding disputes involving tax related concepts or functions similar to this *ad valorem* penalty due to the jurisdictional limitations imposed by the Tax Injunction Act.  *See, e.g., Dawson v. Childs*, 665 F.2d 705, 710 (5th Cir. 1982) (involving the dissolution of tax liens).

4

Further, as the district court noted, the plain language of the Tax Injunction Act's jurisdictional limitation is not focused on taxes only, but rather the broader activities of assessing, levying, and collecting taxes. The challenged ordinance states that the additional penalty is to "defray the costs of collection." Code City of New Orleans § 150-46.3, Ord. No. 18637. Therefore, because of the Tax Injunction Act, this challenge to the collection of taxes cannot be heard in federal district court.

Second, as the district court Order noted, the availability of the Louisiana protest provision, La. Rev. Stat. § 47:2110, or a state declaratory action, indicate that Appellants can bring their challenge in state court. The pending state court actions, similar to this challenge, are an indication that Appellants could have brought a state action. The district court also was correct in finding that just because Appellants may face formidable defenses in state court, including prescription, this does not mean that a "plain, speedy and efficient remedy" is unavailable in state court. *See, e.g., Henry v. Metro. Dade County*, 329 F.2d 780 (5th Cir 1964); *Stephens v. Portal Boat Co.*, 781 F.2d 481 (5th Cir. 1986). As we have stated, the Appellants potential failure in state court "provides no basis for circumventing the jurisdictional bar imposed by the Tax Injunction Act." *Smith v. Travis County Educ. Dist.*, 968 F.2d 453, 456 (5th Cir. 1992) (citations omitted).

Finally, as we noted in our recent opinion in *ACLU Found. of La. v. Bridges* ____ F.3d _____ , _____ (5th Cir. 2003), affirming the district court's dismissal does not mean Appellants are left with no option. For example, after a review of the history of the Act we noted in *Bland v. McHann*, that "We are convinced that both longstanding judicial policy and congressional restriction of

5

federal jurisdiction in cases involving state tax administration make it the duty of federal courts to withhold relief when a state legislature has provided an adequate scheme whereby a taxpayer may maintain a suit to challenge a state tax.  The taxpayer may assert his federal rights in the state courts and secure a review by the Supreme Court."   463 F.2d 21, 24 (5th Cir. 1972).   That is precisely what the Tax Injunction Act requires the Appellants to do, *i.e.*, first challenge the New Orleans ordinance in Louisiana courts and, if need be, secure review by the Supreme Court.

Having carefully reviewed the record of this case, the parties' respective briefing and arguments, for the reasons set forth above and the reasons articulated by the district court in its Order, we affirm the decision of the district court dismissing the case.

**AFFIRMED**

STANWOOD R. DUVAL, JR., District Judge, dissenting:

I respectfully dissent from the majority opinion, taking cognizance that the Courts are chary to interfere with the collection of taxes imposed under state law. This exercise in comity is further reinforced by the Tax Injunction Act which states:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy & efficient remedy may be had in the course of such state.

28 U.S.C. § 1341.

Here, the putative class members have challenged the constitutionality of a 30% penalty imposed on delinquent taxpayers during various tax years. They do not challenge the constitutionality of the assessment of the underlying *ad valorem* tax. On March 5, 1998, the City of New Orleans adopted City Ordinance No. 18637 MCS (hereinafter "the 1998 Ordinance"), which imposed a 30% penalty if the taxes remained unpaid as of April 1 of the tax year (i.e., three months after they were due). The 30% penalty was assessed "if the taxing unit has referred the collection of the delinquent taxes, penalty, and interest to an attorney or collection agent." Significantly, the penalty applied retroactively. Section 150-46.3 of the Ordinance states:

> "All delinquent taxes for prior years and taxes that remained delinquent on April 1 of year in which they become delinquent, incur an additional penalty to defray cost of collection if the taxing unit has referred the collection of the delinquent taxes, penalty and interest to an attorney or collection agent."

In other words, the 1998 Ordinance retroactively applied to prior years. The statute does not specify how far back the 1998 Ordinance reaches. The majority agrees with the district court which

7

concluded that the penalty could not be extricated from the tax itself. I respectfully suggest that the majority and the district court did not sufficiently probe the crucial question addressed by *Home Builders* and its progeny: "What is the purpose of the assessment and what is its ultimate use?" See *Home Builders of Mississippi, Inc. v. City of Madison*, F.3d 1006, 1010 (5th Cir. 1998); *Neinast v.State of Texas,* 217 F.3d 275 (5th Cir. 2000); *Hexom v.Oregon Dept.of Trans.,* 177 F.3d 1134 (9th Cir. 1999); *Marcus v. Kansas*, 170 F.3d 1305 (10th Cir. 1999); *Hager v. City of West Peoria,* 84 F.3d 865, 870-71 (7th Cir. 1996). The underlying *ad valorem* tax and the penalty are facially distinct and should not be considered identical unless the purpose of the penalty truly fits the classic "rubric of taxes." The essential query posed by *Home Builders* and subsequent cases has been designated the "ultimate use test," and requires the court to go beyond a cursory analysis. The "ultimate use test" requires the court to look at the penalty as a whole to determine if it is a tax.

In applying the "ultimate use test," the court should focus on several factors which distinguish a tax from a fee. The classic fee is imposed:

    (1) by an agency, not the legislature,

    (2) upon those it regulates, not the community as a whole, and

    (3) for the purpose of defraying regulatory costs.

*Neinast ,* 217 F.3d at 278. One crucial factor in the analysis is whether the assessment defrays the cost of the program (a fee), or whether it provides a general benefit to the community (a tax). See *Neinast,* 217 F.3d 275, 278. This distinction is determined by examining whether or not the funds go directly to the narrow purpose for which they were exacted, as opposed to some other general purpose. *Id.* In *Neinast*, this court considered whether the Tax Injunction Act prevented the plaintiffs from challenging a Texas statute that charged a $5.00 fee for handicapped placards. According to

8

the statute, the funds raised from the $5.00 fee were deposited in the state highway fund "to defray the cost of providing the disabled parking placard."

Texas argued that because the funds went into a "general fund," this was of general benefit to the community and did not solely accomplish the purpose of defraying the cost of the program. Additionally, Texas argued that the charge was a tax because the monies went to the tax collector first and then the highway fund. The court disagreed and held that the assessment was a fee. The court characterized the stated purpose of the statute as "narrow" and "for the benefit of the program [of providing placards] itself" instead of being directed toward a broad benefit to the improvement of highways. *Id.* at 278. The court distinguished the Texas placard fee from *Home Builders*, in which case a municipality imposed an impact fee on developers and builders to pay "a fair share of providing and maintaining . . . essential municipal services." *Home Builders,* 143 F.3d at 1012. The *Home Builders* court considered this charge a tax because the collected funds were, in fact, used for a variety of municipal services, including streets, fire and police departments, parks, and recreation. *Id.* See *Hager*, 84 F.3d 865, 870. In the case at bar, evidence should have been taken at the preliminary injunction hearing to determine whether the 1998 Ordinance should be characterized as a fee. Furthermore, the ordinance is not an *ad valorem* tax as all *ad valorem* taxes under the Louisiana Constitution must be approved by a vote of the people. See La. Const. Art. VI, §26. It does not appear that the 30% penalty was ever approved by a vote of the people and therefore is certainly not an *ad valorem* tax.

Moreover, the ordinance is more akin to a fee because exacts a regulatory function: it is imposed on the discrete group of people that it regulates. The district judge concluded that since *ad valorem* taxes are imposed on all property owners, this factor tended to show that the penalty was

9

a tax because property owners are not a discrete group. However, this conclusion is not entirely correct. The penalty is applied to a narrower group of people than "all property owners." The penalty applies only to those property owners who are delinquent in paying their property taxes, not to all property owners. Consequently, this factor tends to support the classification of the penalty as a fee because a fee is "imposed upon those it regulates, not the community as a whole." *Neinast,* 217 F.3d at 278.

Additionally, as to the "ultimate use test," the penalty's purpose, as gleaned from the preamble and the circumstances underlying its imposition fits the paradigm of a fee, rather than a tax. The preamble states that the 1998 ordinance is:

> AN ORDINANCE to provide interest and increased penalties on delinquent ad valorem taxes and for the payment of costs and attorneys' fees in connection with the collection of such taxes:
>
> WHEREAS, the City of New Orleans incurs significant delinquencies in the collection of ad valorem tax revenues due to (i) lack of penalties **to encourage prompt compliance by the taxpayers with the tax laws** and (ii) **lack of provision for collection fees, attorneys fees, costs and expenses; and attorneys' fees and costs to cover the costs of collection**; and
>
> WHERE AS, the city will be able to increase revenues from ad valorem taxes through the imposition of interest and penalties and in imposing collection fees, attorney fees, costs and expenses on the taxpayer. . . .

(Emphasis added).

As the first clause of the preamble illustrates, the purpose of the 1998 Ordinance is two-fold: "to provide a mechanism that will finance the collection of delinquent taxes and to penalize delinquent taxpayers." Both of the stated purposes in the first clause address the City Council's regulatory functions of controlling the behavior of delinquent taxpayers and defraying the costs of

10

collection.

The second clause is also regulatory because it attempts to control the behavior of delinquent taxpayers and more significantly, the purposes of the fee is to "defray costs" which was also emphasized by the majority. An assessment which "defrays costs" has historically been regarded as a fee rather than a tax. See *Neinast*, 217 F.3d 275 at 278. At oral argument, it was conceded that until recently, the penalty collected went into a lock box and then paid directly to the defendant law firm. It should be kept in mind that the traditional way of collecting delinquent *ad valorem* taxes in Louisiana is that the property is sold for the amount of taxes and penalties and then can be redeemed by the taxpayer within a specified period of time by paying all delinquent taxes, penalties and costs. Moreover, the liability is *in rem* and not personal to the property owner. The 30% penalty has produced millions of dollars in attorneys' fees, was not voted on by the citizens of Orleans Parish, and is not an *ad valorem* tax. Therefore, it appears that the "ultimate use" of these funds was specifically to pay attorneys and to defray costs and was certainly not part of the general revenue of the taxpaying entity.

Finally, there is a substantial question as to whether there is, in fact, a "plain, speedy and efficient" remedy available in state court. The taxpayers, especially those to whom the retroactive aspect of the penalty applies, have a remedy that is, at best, illusory. In order to protest a tax, one must pay the tax under protest. LA. Rev. Stat. § 47:2110. The courts have held that this protest must be timely. See *Affordable Housing Developers, Inc. v. Kahn,* 2000-CA-0614, 2000-CA-0612, (La. App. 4 Cir. 4/25/01), 785 So. 2d 251. Under the statute, it would have been impossible for some taxpayers to timely pay the penalty under protest since it was retroactively imposed.

Therefore, at the very least, there should have been an evidentiary hearing concerning the

11

purpose and use of the funds derived from the penalty as well as the efficacy of an available "plain, speedy, efficient remedy" in the state courts.

Certainly, the federal courts should use great restraint in interfering with the collection of state taxes; however, this is a very unusual retroactive penalty which appears to be a fee in the clothing of a tax. Taxpayers should not be deprived of their right to a federal forum in circumstances where a potentially unconstitutional fee (not a tax) has been imposed upon them.