FARRIS, J., delivered the opinion of the court, in which RYAN, J., joined. MOORE, J. (pp. 616-18), delivered a separate dissenting opinion.
OPINION
FARRIS, Circuit Judge.
BACKGROUND
Andrew Hedgepeth, Celia Burson, David McCleary, and Gaynell Metts are disabled individuals who brought this action on September 12, 1997, under the federal Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., against the State of Tennessee, the State of Tennessee Department of Safety, and Mike Green, the Commissioner of the Tennessee Department of Safety.
The State of Tennessee charges a sum for the issuance and renewal of disabled parking placards pursuant to the Disabled Drivers Law of 1975, Tenn.Code Ann. § 55-21-101, et seq. The placards allow disabled persons equal access to public and private facilities by making available various parking accommodations. The State of Tennessee Department of Safety charges disabled persons (or those who provide transportation services for them) a fee of $20.50 for vehicle registration and for a placard that is valid for two years, and $3.00 for replacement or renewal of the placard every two years thereafter. Plaintiffs contend that the State’s fees are surcharges that discriminate against individuals with disabilities in violation of the ADA. The force of Plaintiffs’ contention is that a public entity may not permissibly charge the disabled for measures taken to provide the nondiscriminatory treatment required by the Act. See 42 U.S.C. § 12132; 28 C.F.R. § 35.130(f). The complaint seeks damages under the ADA, as well as declaratory and injunctive relief.
The State moved to dismiss pursuant to Federal Rule of Civñ Procedure 12(b)(1) arguing that: (1) the district court did not have subject matter jurisdiction because the State’s charges were “taxes” for purposes of the Tax Injunction Act; (2) the court lacked jurisdiction because the State is immune from such a lawsuit under the Eleventh Amendment; and (3) Plaintiffs’ claims were barred by the statute of limitations.
The district court dismissed Plaintiffs’ complaint on December 28,1998. It determined that the State’s assessment for the disabled parking placards was a tax for purposes of the Tax Injunction Act and that Plaintiffs had a “plain, speedy, and efficient remedy” to contest the matter at the state level. Aternatively, the district court held for purposes of appellate review that the complaint should also be dismissed on grounds of Eleventh Amendment immunity[1] and the statute of limita *611 tions.[2]
DISCUSSION
1. Whether the Federal Courts Lack Jurisdiction Over Plaintiffs’ Complaint Pursuant to the Tax Injunction Act.

A. Standard of Review

We review de novo a district court’s order dismissing a complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). See Moir v. Greater Cleveland Reg’l Transit Auth., 895 F.2d 266, 269 (6th Cir.1990). When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction. See id. The district court’s factual findings made in resolving a motion to dismiss are reviewed for clear error while its application of the law to the facts is reviewed de novo. See RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1135 (6th Cir.1996).

B. The Tax Injunction Act

The district court’s jurisdiction turns on the application of the Tax Injunction Act, which provides that “[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.” 28 U.S.C. § 1341. The purposes of the Act are “to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising.” Wright v. McClain, 835 F.2d 143, 144 (6th Cir.1987).
To date, there are two federal circuit courts that have addressed the precise issue of whether assessments imposed for disabled parking placards constitute taxes or fees under the TIA.[3] See Hexom v. Oregon Dep’t of Transp., 177 F.3d 1134 (9th Cir.1999); Marcus v. Kansas, Dep’t of Revenue, 170 F.3d 1305 (10th Cir.1999). The Ninth Circuit in Hexom held that the $4.00 fee was not designed to raise revenue. See Hexom, 177 F.3d at 1139. Rather, the fee was designed to pay for the costs of a special program, and thus was not a tax for purposes of the TIA and did not preclude federal court jurisdiction. See id. The Tenth Circuit also concluded that the $5.25 assessment was not a tax because it was “expressly tied to the administrative costs of a specific regulatory scheme and, therefore, its essential character Twas] regulatory.” Marcus, 170 F.3d at 1312.

1. Whether Tennessee’s Assessment is a Fee or a Tax

The issue is whether the State’s $20.50 assessment for disabled parking placards and $3.00 assessment for renewal or replacement is a tax or a regulatory fee. If the assessment is a tax, then the Act applies and operates to bar federal jurisdiction unless the state fails to provide a *612 plain, speedy and efficient remedy.[4] See Wright, 835 F.2d at 144-45. “It is elemental ... that the label given an assessment by state law is not dispositive of whether the assessment is a ‘tax under state law.’ Rather, the definition of the term ‘tax’ is a question of federal law, and the issue here is whether the assessment is a tax within the meaning of that term as employed by Congress in the Tax Injunction Act.” Id. at 144 (citations omitted).
The leading decision is San Juan Cellular Telephone Co. v. Public Service Commission of Puerto Rico, 967 F.2d 683 (1st Cir.1992). The court explained that,
[t]he classic “tax” is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic “regulatory fee” is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency’s regulation-related expenses.
Id. at 685 (citations omitted).
The Sixth Circuit has adopted the First Circuit’s approach in determining whether an assessment is a “tax,” utilizing the often cited three-factor test: “(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed.” American Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Management Dist., 166 F.3d 835, 837 (6th Cir.1999) (quoting Bidart Bros. v. California Apple Comm’n, 73 F.3d 925, 931 (9th Cir.1996)); see San Juan Cellular Tel. Co., 967 F.2d at 685. Additionally, if “the assessment falls near the middle of the spectrum between a regulatory fee and a classic tax, the predominant factor is the revenue’s ultimate use. When the ultimate use is to provide a general public benefit, the assessment is likely a tax, while an assessment that provides a more narrow benefit to the regulated companies is likely a fee.” American Landfill, Inc., 166 F.3d at 838 (citations omitted). Fees can serve regulatory purposes as distinguished from general public purposes in two ways: either by discouraging particular conduct through the device of making it more costly, or by generating income ear marked to cover the cost of the regulation. See San Juan Cellular Tel. Co., 967 F.2d at 685.
The record demonstrates that the State’s assessment is a tax rather than a fee. Under the statutory scheme imposed by the Tennessee legislature, the $20.50 disabled placard assessment and the $3.00 renewal assessment are apportioned into the State’s highway fund, the general fund, the police pay supplement fund, and the trooper safety fund. See Tenn.Code Ann. §§ 55-4-103, 55-4-111, 55-6-107, 55-21-103. Specifically, the assessment is allocated as follows:
1. The $20.50 placard fee collected by county clerks and remitted to the Title and Registration Division of the Tennessee Department of Safety or remitted directly to the division by applicants is deposited in the State of Tennessee Treasury and is allocated in the following manner:
(A) There is $18.75 registration tax provided by TenmCode Ann. §§ 55 — 21—103(b)(2)(A)(i) and 55-4-lll(a)(l). Of this $18.75 the *613 first $1.00 is paid into the state treasury and credited to the police pay supplement fund. Of the $17.75 remainder, ninety-eight percent (98%) is distributed to the general highway fund and two percent (2%) to the general fund. This distribution is made pursuant to Tenn.Code Ann. § 55-6-107, which directs the proceeds of any tax collected under Title 55, chapter 4 to be used for the general public benefit in highway and improvement projects and in retirement of state debt.
(B) The $0.75 reflectorization fee collected pursuant to Tenn.Code Ann. § 55 — 4r-l 03(f)(2) is sent to the General Fund earmarked for use in the salary supplement for law enforcement members of the Department of Safety.
(C) The $1.00 reflectorization fee provided by Tenn.Code Ann. § 55-4-108(f)(1) is allocated to the General Fund.
2. The $8.00 fee charged upon renewal of an expired placard pursuant to Tenn.Code Ann. § 55 — 21—103(f)(1) is allocated to the Highway Fund and the General Fund in the same manner as the $17.75 registration tax.
The State’s assessments are allocated in a manner that make it clear the ultimate purpose of the assessments is to benefit the general public of the State of Tennessee. As such, the assessment must constitute a tax under the TIA. See American Landfill, Inc., 166 F.3d at 839-40 (“The revenue’s ultimate use as a benefit shared by the public and not just the waste disposal facilities dictates that the assessment here is a tax.”). The State’s highway fund, the general fund, the police pay supplement fund, and the trooper safety fund “relate directly to the general welfare of the citizens of Tennessee and the assessments to fund them are no less general revenue raising levies simply because they are dedicated to a particular aspect of the commonwealth.” Wright, 835 F.2d at 145.
There is simply no evidence to support Plaintiffs’ contention that the funds collected from the placards are paid into a special fund to benefit the regulated entities or to defray the cost of regulation. Plaintiffs, however, have submitted a 1994 “Fiscal Note Support Form” to infer the legitimacy of their contention. This document provides that the fiscal impact of a proposed amendment to the Disabled Drivers Law changing the term “handicapped” to “disabled” pursuant to the ADA and charging a renewal fee of $5.00 per placard every two years would be $204,000 bi-annually with an estimated revenue of $500,000. The Disabled Drivers Law was ultimately amended to provide for a renewal fee of $3.00 bi-annually. See TenmCode Ann. § 55-21-103(f)(l). The argument, asserted by Plaintiffs and adopted by the dissent, that the revenue generated by a $3.00 bi-annual assessment ($300,000) supports a relationship between the assessment and the cost of the renewal program ($204,000), is speculation. See infra pp. 617-18. We do not know the reasons why the legislature decided to reduce the $5.00 amount to the $3.00 amount; what we do know is that the renewal amount charged is ultimately used to support the highway fund and the general fund. See supra p. 613.
Plaintiffs’ further contention that the revenues generated by these assessments do not affect the State’s budget in “any material way” also finds no support in the record. As we recently explained, the TIA “makes no exception for challenges to taxes which constitute a small portion of a state’s revenue sources rather than a large portion.” American Landfill, Inc., 166 F.3d at 840.
The only evidence in the record regarding any costs associated with the State’s disabled parking program is the actual cost of the disabled parking placard. The Director of the State of Tennessee Department of Safety, Title and Registration Di *614 vision testified that the cost of the permanent placard was 45.4 cents ($0,454) and the disabled license plate was $1.32. While we do not dispute that there must be other administrative costs associated with the program, we do not know the source or the amount of those administrative costs. Plaintiffs have simply failed to demonstrate that the $20.50 is some approximation of the costs associated with the program.[5] See Thrope, 19 F.Supp.2d at 823. The substantial difference between the actual cost of the permanent placard or license plate and the amount that must be paid to obtain one supports a conclusion that the assessment is for general revenue raising purposes. See id.
Plaintiffs contend on appeal that “the State’s targeting of a narrow class is expressly prohibited by Congress in the ADA, and it overlooks the fact that the charge is in the nature of a privilege fee in that the charge for the parking placard is for the privilege of parking in handicapped parking spaces.” This contention, however, fails to address the district court’s conclusion that the instant circumstance is inapposite to that of Collins Holding Corp. v. Jasper County, 123 F.3d 797, 800 (4th Cir.1997) (stating the proposition that when “the assessment covers only a narrow class of persons and is paid into a special fund to benefit regulated entities or defray the cost of regulation, it sounds like a fee.”). Plaintiffs have successfully shown that only a narrow class of persons is charged with the assessment, but they plainly fail to present any facts to show that the assessments are “paid into a special fund to benefit regulated entities or defray the cost of regulation.”[6] Id.
Using the three-factor inquiry outlined in San Juan Cellular Telephone Co. and adopted by this circuit leads to the same conclusion. Both the first and third factors weigh heavily in favor of the State. Not only did the State of Tennessee authorize and legislate that the assessments be charged against disabled persons, but they also provided the manner in which they were to be allocated to benefit the general public. Although the second factor, the parties upon whom the assessment is imposed, weighs in favor of the Plaintiffs, the district court properly determined that “[standing alone, the fact that an assessment targets only a narrow class of people is not enough to characterize the assessment as a fee. See Wright, 835 F.2d at 144-45 (holding that fees charged to parolees were taxes for purposes of the TIA).”
Based on the evidence in the record, the district court properly concluded that the ultimate purpose of the State’s assessment was for general revenue raising purposes; such purpose was unrelated to the costs associated with the disabled placard pro *615 gram; and finally, the assessment was a tax within the meaning of the TIA.

2. Whether Plaintiffs Have a Plain, Speedy and Efficient Remedy Under State Latv

Although the assertion of federal jurisdiction may interfere with state tax assessment and collection, such jurisdiction will nonetheless exist if the state fails to provide a “plain, speedy and efficient remedy” in state courts. 28 U.S.C. § 1341. The plain, speedy and efficient remedy contemplated by the TIA merely requires that the state provide certain minimal procedural protections against illegal tax collection. See Rosewell v. LaSalle Nat’l Bank, 450 U.S. 503, 512, 101 S.Ct. 1221, 1229, 67 L.Ed.2d 464 (1981). The state need only provide a full hearing at which a taxpayer may present and secure a judicial determination at which he or she may raise any and all constitutional objections to the tax. See id. Furthermore, we have concluded that “[sjtate procedures that call for an appeal to a state court from an administrative decision meet these minimal criteria.” Northwest Airlines, Inc. v. Tennessee State Bd. of Equalization, 11 F.3d 70, 72 (6th Cir.1993).
Whether the State of Tennessee provides a “plain, speedy and efficient remedy” in state courts depends on the interpretation of the Tennessee statute which both allows and limits monetary claims brought before the Claims Commission. See Tenn.Code Ann. § 9-8-307. This statute provides that the Tennessee Claims Commission has exclusive jurisdiction over a claim “for the recovery of taxes collected or administered by the state.”[7] Tenn. Code Ann. § 9-8-307(a)(l)(O). Tennessee, however, has not declared itself subject to suit in all actions to recover taxes. Rather, Tennessee Code Annotated § 9-8-307(a)(1) sets out a list of several types of claims that may be brought before the Claims Commission, while Tennessee Code Annotated § 9-8-307(a)(2) limits the type of claims that may be brought. The limiting provision provides:
No item enumerated in this subsection shall be interpreted to allow any claim against the state on account of the acts or omissions of persons, partnerships, corporations or other entities licensed or regulated by agencies of the state, notwithstanding any negligence committed by the state in the course of performing licensing or regulatory activities. No item enumerated in this subsection shall be interpreted to allow any claims against the state arising out of or resulting from:
(A) The issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization ....
Tenn.Code. Ann. § 9-8-307(a)(2).
The district court agreed with the State’s interpretation of the statute, and concluded that Plaintiffs had a plain, speedy and efficient remedy. It ruled that “Defendants [were] correct that plaintiffs [were] not making a claim on account of the acts of any such entity,” and “[t]hus, the first sentence of Tennessee Code Annotated § 9-8-307(a)(2) [did] not preclude plaintiffs from bringing their claim before the Commissioner.” Additionally, the district court stated that the language of § 9-8-307(a)(2)(A), which precludes claims against the state “arising out of or resulting from ... [t]he issuance ... of ... any ... license,” did not preclude Plaintiffs’ claim because they were not seeking damages based on the issuance of a license. Rather, Plaintiffs’ claim was based on the State’s practice of charging disabled individuals for a parking placard which allegedly violated the ADA.
On appeal, Plaintiffs argue that the district court’s conclusion is at odds with the *616 plain, unambiguous language of § 9-8-307(a)(2)(A). They contend that their action unquestionably arises out of the issuance of a permit or license. Although we agree that the language is ambiguous and subject to the interpretation adopted by Plaintiffs, we conclude that the proper interpretation of the statute does not preclude Plaintiffs from bringing this action before the Claims Commission.
The jurisdiction of the Claims Commission to entertain claims against the State must be determined from the language of Tennessee Code Annotated § 9-8-307 in its entirety. The primary rule of statutory construction is to ascertain and give effect to the legislative intent. See First American Nat’l Bank-Eastern v. Federal Deposit Ins. Corp., 782 F.2d 633, 636 (6th Cir.1986). In ascertaining this intent, we look to the general purpose to be accomplished by the legislation. See id. Section 9-8-307(a)(3) states, “[i]t is the intent of the general assembly that the jurisdiction of the claims commission be liberally construed to implement the remedial purposes of this legislation.” Following the statute’s mandate, we construe jurisdiction liberally and resolve that the collection of taxes charged for the disabled parking placards can be adequately challenged before the Claims Commission with a subsequent appeal to the Tennessee state courts. The district court properly determined that it was without subject matter jurisdiction.
CONCLUSION
The State’s assessment against disabled persons for the parking placards is a tax for purposes of the Tax Injunction Act. We conclude that the Plaintiffs had a plain, speedy and efficient remedy before the Claims Commission. The district court properly dismissed the action for lack of subject matter jurisdiction.
AFFIRMED.

. Although the district court dismissed the action under Fed.R.Civ.P. 12(b)(1), the court addressed the State's contention regarding Eleventh Amendment immunity for purposes of appellate review. However, we hold this issue in abeyance pending the disposition of three other cases, and thus decline to discuss Eleventh Amendment immunity here.

. In light of our determination regarding the Tax Injunction Act, we do not reach the issue of the applicable statute of limitations for claims brought under Title II of the ADA.

. At least three district courts have also confronted the issue. While the courts are split in their determination, it appears that one of the guiding factors is the cost of the assessment, and whether the cost is nominal or exacts a greater amount for general revenue raising purposes. See Thrope v. Ohio, 19 F.Supp.2d 816, 823 (S.D.Ohio 1998) (“the [$5.00] placard surcharge is not a 'tax’ for purposes of the Tax Injunction Act, because it is charged only to the applicants for a placard and designed to cover the regulatory costs of administering the program”); Lussier v. Florida, Dep’t of Highway Safety & Motor Vehicles, 972 F.Supp. 1412, 1420-21 (M.D.Fla.1997) (finding that $13.50 of the $15.00 disabled person parking permit fee was not used to defray administration expense and was, therefore, a tax within the meaning of the TIA); Rendon v. Florida, 930 F.Supp. 601, 604-05 (S.D.Fla.1996) (finding disabled parking permit fee to be a tax where the $15.00 surcharge was not assessed for regulatory reason and bore no relationship to cost of regulatory program).

. The TIA has also been broadly interpreted to bar suits for declaratory relief, injunctive relief, as well as monetary relief when there is an adequate remedy in state court. See California v. Grace Brethren Church, 457 U.S. 393, 408-10, 102 S.Ct. 2498, 2507-09, 73 L.Ed.2d 93 (1982); National Private Truck Council, Inc. v. Oklahoma Tax Comm’n, 515 U.S. 582, 586-88, 115 S.Ct. 2351, 2354-55, 132 L.Ed.2d 509 (1995).

. Tennessee derives the $20.50 for the disabled parking placard and vehicle registration from the amount charged for the registration of all Class C passenger motor vehicles. See Tenn.Code. Ann. § 55-21-103(b)(2)(A)(i) ("If the applicant has not applied for vehicle registration, then the cost of the placard shall be the same as the regular fee for passenger motor vehicles, as provided in § 55-4-111.”). The dissent reasons that the original enactment of the Disabled Drivers Law of 1975, which provided that the actual cost of the placard be paid by the disabled driver, tied the amount assessed to the costs of the program, and thus suggests that the purpose of the assessment was regulatory. See infra p. 616-17. This reasoning, however, does not overcome the insurmountable fact that the current version of Tennessee Code Annotated § 55 — 21—103(b)(2)(A)(i) requires disabled persons who receive disabled parking placards upon registration to pay the same approximate amount required of non-disabled persons to register their vehicle. Further, the collected monies from the disabled persons are distributed in the same way as non-disabled persons. See Tenn.Code Ann. §§ 55-4-111(a)(2), 55-6-107(a). Disabled persons are merely being taxed in the same way that non-disabled persons are being taxed.

. The dissent would rather focus the inquiry on "why the money is taken” instead of "where the money goes.” Infra p. 616. Although such inquiry is entirely appropriate, the answer inexorably leads us to the evidence in the record which shows us that the money is taken to benefit the general welfare, and not to defray the specific costs of the disabled parking placard program.

. The decision of the Claims Commission is appealable to the state court of Tennessee. See Stewart Title Guar. Co. v. McReynolds, 886 S.W.2d 233, 237-38 (Tenn.Ct.App.1994).