COLE, Chief Judge,
dissenting.
Wyandotte Municipal Services (“WMS”), a separate entity created under the laws of the State of Michigan and Charter of the City of Wyandotte, [Answer, R. 2, PagelD 119-20 ¶¶ 9-10] charges cable and water subscribers a “franchise fee” for the privilege of using those utilities. Unlike the majority, I believe that despite the fact that the City authorized the fee and that it is used for some common city services, WMS’s franchise fees clearly constitute a regulatory fee rather than a tax. I therefore conclude that the Tax Injunction Act presents no bar to federal court jurisdic *395 tion, and I respectfully dissent from the majority’s holding to the contrary.
The district court erred in failing to first determine whether the Tax Injunction Act, 28 U.S.C. § 1341, divested it of jurisdiction. As the majority correctly states, this was required before proceeding to any of Page’s other claims. (Maj. Op. at 392.) Courts consider three factors in determining whether a charge is a fee or a tax: (1) what entity imposes the assessment; (2) who pays it; and (3) the revenue’s ultimate use. Hedgepeth v. Tennessee, 215 F.3d 608, 612 (6th Cir. 2000).
(1) What entity imposes the assessment. The majority finds that the first factor suggests the franchise fees are taxes because “the Wyandotte City Council itself authorized both franchise fees.” (Maj. Op. at 393.) However, authorization of a fee and imposition of a fee are two different things. The City entered into a contract with WMS to provide Wyandotte citizens with water and cable services. The contract was entered into pursuant to Michigan law, which requires “utility providers to (a) obtain a franchise from a municipality before transacting business within its city limits and (b) secure the municipality’s consent before using municipal highways, streets, alleys or other public places for locating and operating utility equipment and facilities.” (Compl., R. 1, PageID 13 ¶ 11 (citing Mich. Const. Art. VII § 29).) That contract provided for a franchise fee to be charged to WMS for the expenses it would cost the City. The fee here was not “imposed directly by the legislature” on the public. See Bidart Bros. v. Cal. Apple Comm’n, 73 F.3d 925, 931 (9th Cir. 1996). Instead, the fee was imposed on "WMS by the City. [Compl., R. 1, PageID 15-16 ¶ 29.] WMS—not the City—in turn charged its customers the franchise fee.
(2) Who pays the fee. I agree with the majority’s conclusion that the second factor suggests the franchise fees are indeed fees, and not taxes, because they are only paid by those who “voluntarily receive the respective utility service.” (Maj. Op. at 393.)
(3)The revenue’s ultimate use. The majority finds that the third factor suggests the franchise fees are taxes because they were imposed to cover “the same services provided to all City residents: police protection, fire protection, and the services of the Department of Public Works.” (Maj. Op. at 394.) While this is true, the fee covers more than that. Under Michigan law, a “ ‘franchise fee’ is an amount that is paid by a utility provider to a municipality in exchange for the right to serve its citizens and to occupy and use municipally-owned highways, streets, alleys and other public spaces to install, operate, and maintain the infrastructure necessary to provide that service.” (Compl., R. 1, PageID 13 ¶ 12.) Specifically, the franchise fee here also covers expenses such as “occupancy of space in City buildings ... accounting [and] information technology services,” (Page Br. at 17), and “certain administrative services provided by other City employees.” (Drysdale Aff., R. 12-1, PageID 353 ¶ 6.)
The franchise fees paid to the City are “intended to reimburse the City for the cost of providing services to [ ] WMS and are not intended to be transferred to or expended from the General Fund for any other purpose than providing services to WMS.” (Id. at PageID 352 ¶ 5.) These are services that any other private utilities provider would be required to pay. Further, these services benefit WMS’s voluntary subscribers, not the general public. Indeed, the franchise fees ensure that City residents who are not subscribers do not end up subsidizing WMS’s customers.
*396 The majority also finds that “[t]he City makes no attempt to correlate the amounts of the franchise fees with the costs of providing these services to WMS and WMS Cable.” (Maj. Op. at 394.) I respectfully disagree. While Page argues that the franchise fee correlates with a fee the City used to charge and that the amount WMS transfers to the City’s general fund has increased over the years, this is not evidence that the transfers do not correlate to actual City expenses. Undoubtedly, these costs have increased over time, inflation has occurred, and private water and cable providers would reflect the same increases. In opposition to Page’s bare assertions, the City represented that it uses “enterprise fund accounting” to “ensure that revenue is properly tracked and that the portions of the total costs of a service that is recovered through user charges and the portion that is subsidized (if any) are able to be analyzed and evaluated.” (City Br. at 11; see also Drysdale Aff., R. 12-1, PageID 353 ¶¶ 7-9.) In any event, municipalities are not required to “precisely calibrate[ ]” “the amount of a user fee ... to the use that a party makes of Government services.” United States v. Sperry Corp., 493 U.S. 52, 60, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989). Instead, the Supreme Court has held that user fees need only be a “fair approximation of the cost of benefits supplied.” Id. (quoting Massachusetts v. United States, 435 U.S. 444, 463 n.19, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978)). Here, the City’s enterprise fund accounting provides that “fair approximation” because the City only transfers funds into the general fund to reimburse the City for services it provides to WMS. [Drysdale Aff., R. 12-1, PageID 353 ¶¶ 8-9.]
* * *
Accordingly, I would conclude that WMS’s cable and water franchise fees are indeed fees and not taxes. The Tax Injunction Act, therefore, is not implicated and the district court had jurisdiction. I would affirm the remainder of the district court’s decision based on the reasons stated in its opinion.