19-183-cv(L)
Ass'n for Accessible Medicines v. James

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2019

(Argued: December 12, 2019        Decided: September 14, 2020)

Docket Nos. 19-183-cv(L), 19-199-cv(CON), 19-201-cv(CON)

_____

ASSOCIATION FOR ACCESSIBLE MEDICINES, HEALTHCARE
DISTRIBUTION ALLIANCE, SPECGX LLC,

*Plaintiffs-Appellees*,

v.

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF
THE STATE OF NEW YORK, HOWARD A. ZUCKER, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF HEALTH OF THE STATE OF NEW
YORK,

*Defendants-Appellants*.

_____

Before:

CABRANES and LOHIER, *Circuit Judges*, and REISS, *District Judge*.[*]

New York State appeals from consolidated judgments of the United States District Court for the Southern District of New York (Failla, J.) invalidating the State's Opioid Stewardship Act (OSA). The OSA requires opioid manufacturers

---

[*] Judge Christina Reiss, of the United States District Court for the District of Vermont, sitting by designation.

and distributors to make an annual payment to fund statewide opioid-related services but prohibits them from passing the costs of those payments through to their customers. The District Court concluded that this "pass-through" prohibition violated the dormant Commerce Clause. After determining that the prohibition was inseverable from the rest of the OSA, the District Court invalidated the statute in its entirety. On appeal, New York does not challenge the invalidation of the pass-through prohibition. It asks us only to reinstate the OSA's opioid stewardship payment as well as the statute's other remaining provisions. We conclude that the payment is a tax within the meaning of the Tax Injunction Act (TIA), 28 U.S.C. § 1341, and that the District Court should have dismissed the plaintiffs' challenges to the payment under the TIA for lack of jurisdiction. We therefore **REVERSE** the judgments, except insofar as they relate to the pass-through prohibition, which is not before us.

JAY P. LEFKOWITZ, Kirkland & Ellis LLP, New York, NY (Matthew D. Rowen, Kirkland & Ellis LLP, Washington, DC, *on the brief*), *for Plaintiff-Appellee* Association for Accessible Medicines.

MICHAEL B. KIMBERLY, McDermott Will & Emery LLP, Washington, DC (M. Miller Baker, Sarah P. Hogarth, Eric Hageman, McDermott Will & Emery LLP, Washington, DC, Andrew B. Kratenstein, M. Elias Berman, McDermott Will & Emery LLP, New York, NY, *on the brief*), *for Plaintiff-Appellee* Healthcare Distribution Alliance.

Douglas H. Hallward-Driemeier, Ropes & Gray LLP, Washington, DC, Erin R. Macgowan, Ropes & Gray LLP, Boston, MA, *for Plaintiff-Appellee SpecGx LLC.*

STEVEN C. WU, Deputy Solicitor General (Barbara D. Underwood, Solicitor General, Caroline A. Olsen, Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General for the State of New York, New York,

NY, *for Defendants-Appellants* Letitia James and Howard A. Zucker.

LOHIER, *Circuit Judge*:

To address the substantial costs imposed by the national opioid public health crisis as it struck New York, the New York State Legislature enacted the Opioid Stewardship Act (OSA).  See 2018 N.Y. Sess. Laws, ch. 57, pt. NN (codified at N.Y. Pub. Health Law § 3323 and N.Y. State Fin. Law § 97-aaaaa). Part of the Act requires opioid manufacturers and distributors to pay an annual "opioid stewardship payment."  The proceeds must be used to support statewide programs that provide opioid treatment, recovery, prevention, and education services.  Another part of the Act, known as the "pass-through prohibition," bars manufacturers and distributors of opioids from passing the costs of the opioid stewardship payment through to their customers.

Healthcare Distribution Alliance (HDA) and Association for Accessible Medicines (AAM) are trade associations that represent manufacturers and distributors of pharmaceutical products, including opioids, while SpecGx develops, manufactures, and sells opioids.  The three plaintiffs filed separate actions challenging the OSA and seeking declaratory and injunctive relief against the New York Attorney General and the New York Commissioner of Health in

3

their official capacities (collectively "New York"). In a consolidated decision, the United States District Court for the Southern District of New York (Failla, J.) concluded that the OSA's pass-through prohibition violated the dormant Commerce Clause. After determining that the prohibition was not severable from the rest of the Act, the District Court invalidated the Act in its entirety.

The New York State Legislature subsequently amended the OSA so that its provisions expired in December 2018. See 2019 N.Y. Sess. Laws ch. 59, pt. XX, § 5. It then enacted a new payment mandate, effective July 2019, that does not include a pass-through prohibition. See 2019 N.Y. Sess. Laws ch. 59, pt. XX (codified at N.Y. Tax Law §§ 497–99) (the "2019 Act"). In light of this legislative development, the State has elected not to seek reversal of the District Court's invalidation of the pass-through prohibition. On appeal, therefore, New York asks us only to reverse the District Court's invalidation of the remainder of the Act, including the opioid stewardship payment requirement. We conclude that the payment is a tax within the meaning of the Tax Injunction Act (TIA), 28 U.S.C. § 1341, thus depriving the District Court of subject matter jurisdiction to adjudicate the plaintiffs' challenges to the payment. We therefore **REVERSE** the judgment of the District Court insofar as it invalidated the stewardship payment

and the remainder of the Act, with the exception of the pass-through prohibition, the legality of which is not before us on appeal.

BACKGROUND

Opioids are a class of drugs that include prescription pain relievers, synthetic opioids like fentanyl, and heroin.  While prescription opioid medications can treat and manage pain when properly prescribed by a physician, they also pose serious risks of addiction and abuse.  Starting in 1999, the United States experienced a rapid rise in prescription opioid overdose deaths, followed by spikes in heroin and synthetic opioid overdose deaths.  The death toll was accompanied by steep economic costs estimated to total $78.5 billion each year. In 2017 the United States Department of Health and Human Services declared the opioid epidemic a nationwide public health emergency.[1]  That same year, the New York State Department of Health reported that the rate of overdose deaths

---

[1] These background facts about opioids and the national opioid epidemic are taken from the Centers for Disease Control and Prevention, the National Institute on Drug Abuse, and the Department of Health and Human Services.  See Ctrs. for Disease Control and Prevention, Opioid Basics, https://www.cdc.gov/drugoverdose/opioids (last updated Mar. 19, 2020); Nat'l Inst. on Drug Abuse, Opioid Overdose Crisis, https://www.drugabuse.gov/drug-topics/opioids/opioid-overdose-crisis (last updated May 27, 2020); U.S. Dep't of Health and Human Servs., What is the U.S. Opioid Epidemic?, https://www.hhs.gov/opioids/about-the-epidemic (last updated Sept. 4, 2019); see also Fed. R. Evid. 201(b)(2).

involving opioids in New York had doubled between 2010 and 2015.[2] The associated financial cost to New York of addressing the opioid crisis was over $200 million in 2017 alone—a twofold increase from the amount spent in 2011.

The New York State Legislature enacted the OSA to raise $600 million over six years to address the costs of dealing with the crisis. See N.Y. Pub. Health Law § 3323(3); N.Y. State Fin. Law § 97-aaaaa(4); 2018 N.Y. Sess. Laws, ch. 57, pt. NN, § 5. The OSA thus imposes an annual fixed $100 million "opioid stewardship payment" collectively on all licensed opioid manufacturers and distributors that sell or distribute opioids in the State ("licensees"). N.Y. Pub. Health Law § 3323(2)-(3). Each licensee is responsible for paying a portion of the $100 million total based on its market share of opioid sales in New York. Id. § 3323(5). The Department of Health, which collects the funds, annually calculates the amount of each licensee's payment based on reported opioid sales from the previous year. Id. § 3323(4)–(6). Based on 2017 reports, the Department determined that 97 licensees owed stewardship payments in 2018.[3]

---

[2] N.Y. State Dep't of Health, Opioid Annual Report 8 (Oct. 2017), available at https://health.ny.gov/statistics/opioid/data/pdf/nys_opioid_annual_report_2017.pdf (last visited June 26, 2020); see Fed. R. Evid. 201(b)(2).

6

The revenues from the opioid stewardship payments are deposited into the "opioid stewardship fund," a special revenue fund established in the joint custody of the State Comptroller and the Commissioner of Taxation and Finance. Id. § 3323(2); N.Y. State Fin. Law § 97-aaaaa(1). New York law requires that "[m]oneys in [the] opioid stewardship fund shall be kept separate and shall not be commingled with" New York State's general fund or "any other moneys" in the custody of the Comptroller or the Commissioner. N.Y. State Fin. Law § 97-aaaaa(2). New York law also strictly limits how money in the sequestered fund can be used. It may only support programs sanctioned by the State Office of Alcoholism and Substance Abuse Services (OASAS)[4] to "provide opioid treatment, recovery and prevention and education services," and to "provide support for the prescription monitoring program registry" that doctors must consult before prescribing opioids and certain other controlled substances. See id. § 97-aaaaa(4); N.Y. Pub. Health Law § 3343-a(2); see also id. § 3306.

---

[3] The 2019 Act amended the OSA to provide that the OSA will apply only to opioid sales on or before December 31, 2018. 2019 N.Y. Sess. Laws ch. 59, pt. XX, § 5. Sales after that date are subject to the new assessment. Id. § 6.

[4] In 2019 OASAS changed its name to the Office of Addiction Services and Supports.

7

The OSA contains two other provisions of significance to our resolution of this appeal. First, it has a "pass-through prohibition" that bars licensees from passing the costs of their opioid stewardship payments on to purchasers, including the ultimate consumers of opioids. Id. § 3323(2). Licensees that violate the Act's pass-through prohibition are subject to a penalty of up to $1 million for each violation. Id. § 3323(10)(c). Second, the Legislature added a severability clause, which provides that the invalidation of any part of the Act will not "affect, impair, or invalidate" the remainder of the Act. 2018 N.Y. Sess. Laws, ch. 57, pt. NN, § 4 ("If any . . . section of this act shall be adjudged by any court . . . to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof, but shall be confined in its operation to the . . . section directly involved in the controversy in which such judgment shall have been rendered. It is hereby declared to be the intent of the legislature that this act would have been enacted even if such invalid provisions had not been included herein.").

HDA and SpecGx challenged both the opioid stewardship payment and the pass-through prohibition, while AAM challenged only the pass-through prohibition. As relevant here, the plaintiffs argued that the pass-through prohibition violates the dormant Commerce Clause. HDA moved for summary

8

judgment of its claims, while AAM and SpecGx both moved for preliminary injunctions. New York moved to dismiss each case on jurisdictional grounds, arguing, as relevant here, that the TIA, 28 U.S.C. § 1341, barred the District Court from hearing the plaintiffs' claims because the opioid stewardship payment is a tax. New York also defended both the stewardship payment and the pass-through prohibition on the merits.

In a consolidated Opinion and Order, the District Court denied New York's motions to dismiss, granted HDA's motion for summary judgment, and granted AAM's and SpecGx's motions for preliminary injunctions. The District Court concluded that the TIA did not apply to plaintiffs' claims because neither the opioid stewardship payment nor the pass-through prohibition is a tax that triggers the TIA. The District Court also concluded that the separate pass-through prohibition violates the dormant Commerce Clause. Relying on the legislative history rather than the text of the OSA, the District Court held that the stewardship payment requirement could not survive without the pass-through

9

prohibition. Accordingly, the District Court declared the OSA invalid in its entirety and enjoined its enforcement.[5]

This appeal followed.

DISCUSSION

On appeal, New York asks us to reverse the District Court's invalidation of the OSA, including the opioid stewardship payment, but it no longer defends the pass-through prohibition. The validity of the pass-through prohibition thus is not before us on appeal. The only remaining issue is whether the District Court lacked jurisdiction to invalidate or enjoin the State's collection of the opioid stewardship payment because the payment is a tax within the meaning of the TIA, as opposed to a regulatory fee or a punitive fine. We conclude that it is a tax and that the District Court should have dismissed the challenges to the payment requirement for lack of subject matter jurisdiction. Because New York does not challenge the District Court's invalidation of the pass-through

---

[5] The District Court entered various orders and judgments from which New York appeals: a December 19, 2018 Opinion and Order denying New York's motion to dismiss, granting HDA's motion for summary judgment, and granting AAM's and SpecGx's motions for preliminary injunctive relief; a December 19, 2018 Judgment to the same effect; a December 21, 2018 Amended Judgment entered at HDA's request, expressly stating the declaratory and permanent injunctive relief granted to HDA; and a January 2, 2019 Order Granting Injunction entered at AAM and SpecGx's request. The AAM and SpecGx actions are stayed pending this appeal.

prohibition, we need not and do not address whether the prohibition is severable.

I

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. It "prohibits declaratory as well as injunctive relief." California v. Grace Brethren Church, 457 U.S. 393, 411 (1982). The statute "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." Franchise Tax Bd. v. Alcan Aluminium Ltd., 493 U.S. 331, 338 (1990) (quotation marks omitted). Congress intended the TIA "first and foremost [as] a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." Id. (quotation marks omitted).

"Two conditions must be satisfied to invoke the protection of the TIA: first, the surcharges must constitute 'taxes,' and second, the state remedies available to plaintiffs must be 'plain, speedy and efficient.'" Travelers Ins. Co. v. Cuomo, 14 F.3d 708, 713 (2d Cir. 1993) (footnote omitted), rev'd on other grounds sub nom.

11

N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645 (1995). The parties do not dispute the sufficiency of state remedies, and "[t]he Supreme Court has previously determined in other litigation related to the TIA that New York does provide 'plain, speedy and efficient' forums for individuals to bring constitutional challenges to its tax laws." Abuzaid v. Mattox, 726 F.3d 311, 316 (2d Cir. 2013) (citing Tully v. Griffin, Inc., 429 U.S. 68, 76–77 (1976)). So we turn immediately to whether the opioid stewardship payment is a "tax,"[6] a question that we review de novo. See Luessenhop v. Clinton County, 466 F.3d 259, 264 (2d Cir. 2006).

A

"Although there is no bright line between assessments that are taxes and those that are not, most courts agree that [a]ssessments which are imposed primarily for revenue-raising purposes are 'taxes,' while levies assessed for

---

[6] The plaintiffs maintain that the TIA did not deprive the District Court of jurisdiction even if the stewardship payment is a tax because the District Court's invalidation of the stewardship payment requirement flowed entirely from its severability and constitutional analyses of the pass-through prohibition. But the TIA plainly bars federal courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law" so long as state remedies are adequate. 28 U.S.C. § 1341. Thus, if the stewardship payment is a tax, then the District Court should have dismissed all of the plaintiffs' challenges to the opioid stewardship payment—including on severability grounds—because plaintiffs' claims are barred by the TIA.

regulatory or punitive purposes, even though they may also raise revenues, are generally not 'taxes.'" Travelers, 14 F.3d at 713 (quotation marks omitted).

In San Juan Cellular Telephone Co. v. Public Service Commission, the First Circuit devised a three-factor test, which we have cited with approval, for distinguishing taxes from regulatory fees.[7] See 967 F.2d 683, 685 (1st Cir. 1992) (Breyer, C.J.); see also Entergy Nuclear Vt. Yankee, LLC v. Shumlin, 737 F.3d 228, 232–33 (2d Cir. 2013) (citing San Juan Cellular with approval); Travelers, 14 F.3d at 713 (same). The three factors are: (1) the nature of the entity imposing the assessment, (2) the population subject to the assessment, and (3) the ultimate allocation or use of the revenues generated by the assessment. See Entergy, 737 F.3d at 232–33. To put these factors in context, the First Circuit helpfully described "a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other":

> The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. . . . The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. . . .

---

[7] Several sister circuits have adopted the San Juan Cellular factors in analyzing whether an assessment is a tax within the meaning of the TIA. See Hill v. Kemp, 478 F.3d 1236, 1245–46 (10th Cir. 2007) (Gorsuch, J.); Hedgepeth v. Tennessee, 215 F.3d 608, 612 (6th Cir. 2000); Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130, 134 (4th Cir. 2000); Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1011 & n. 14–15 (5th Cir. 1998); Bidart Bros. v. Cal. Apple Comm'n, 73 F.3d 925, 931–33 (9th Cir. 1996).

It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. . . . Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.

San Juan Cellular, 967 F.2d at 685.

In Entergy, we focused largely on the third San Juan Cellular factor. See Entergy, 737 F.3d at 232–33 (discussing the other two factors with approval but finding it unnecessary to adopt them at the time). Our sister circuits appear to agree that this factor is the most significant. See Hill v. Kemp, 478 F.3d 1236, 1245 (10th Cir. 2007) (Gorsuch, J.) ("[T]he critical inquiry focuses on the purpose of the assessment and the ultimate use of funds." (quotation marks omitted)); Hedgepeth v. Tennessee, 215 F.3d 608, 612 (6th Cir. 2000) (describing the revenue's ultimate use as "the predominant factor" (quotation marks omitted)); Collins Holding Corp. v. Jasper County, 123 F.3d 797, 800 (4th Cir. 1997) (explaining that "the heart of the [TIA] inquiry centers on function, requiring an analysis of the purpose and ultimate use of the assessment"); San Juan Cellular,

14

967 F.2d at 685 (noting that courts "have tended . . . to emphasize the revenue's ultimate use" in cases falling in the middle of the tax–regulatory fee spectrum).

"[T]he principal identifying characteristic of a tax, as opposed to some other form of state-imposed financial obligation," therefore, "is whether the imposition serve[s] general revenue-raising purposes," which "in turn depends on the disposition of the funds raised." Entergy, 737 F.3d at 231 (quotation marks omitted); see id. at 232 ("[C]ourts applying the San Juan factors . . . have . . . concluded that whether the purported tax is directed to general public purposes is the most salient factor in the decisional mix." (quotation marks omitted)). If the "revenue's ultimate use" is to "provide[] a general benefit to the public, of a sort often financed by a general tax," then the imposition is likely to be a tax. Id. at 232 (quoting San Juan Cellular, 967 F.2d at 685). By contrast, if the funds are allocated to "provide[] more narrow benefits to regulated companies or defray[] [an] agency's costs of regulation," the assessment is more likely to be seen as a regulatory fee that does not implicate the TIA. Id. (quoting San Juan Cellular, 967 F.2d at 685).

B

As we have described, faced with rising costs associated with mounting statewide opioid addiction and opioid-related deaths, the State Legislature crafted the opioid stewardship payment to raise $600 million to respond to the State's public health crisis. New York's allocation of revenues from the payment thus strongly suggests that the stewardship payment requirement serves general revenue-raising purposes without a regulatory or punitive aim.

Funds from the stewardship payment are statutorily directed to support programs that are operated or authorized by OASAS "to provide opioid treatment, recovery and prevention and education services" and to support the State's prescription monitoring program registry. N.Y. State Fin. Law § 97-aaaaa(4). Both the OASAS programs and the registry reflect broad public health initiatives that undoubtedly provide a "general benefit" to New York residents "of a sort often financed by a general tax." Entergy, 737 F.3d at 232 (quotation marks omitted); see, e.g., N.Y. Tax Law § 482(b); N.Y. Pub. Health Law § 2807-v (funding public health programs with the proceeds from New York's cigarette excise tax).

The OSA also effectively bars using any revenue generated from the stewardship payment to deliver "narrow benefits" to opioid manufacturers and distributors. Entergy, 737 F.3d at 232 (quotation marks omitted); cf. Bidart Bros. v. Cal. Apple Comm'n, 73 F.3d 925, 927 (9th Cir. 1996) (holding that an assessment imposed on apple producers was not a tax where proceeds were "used predominantly to promote the sale of . . . apples"). The revenue generated from the stewardship payment also does not "defray" the Department of Health's "costs of regulat[ing]" manufacturers and distributors. Entergy, 737 F.3d at 232 (quotation marks omitted); cf. Gov't Suppliers Consolidating Servs., Inc. v. Bayh, 975 F.2d 1267, 1271 n.2 (7th Cir. 1992) (holding that fees imposed on waste-hauling trucks were not taxes because the proceeds were used for the "regulatory" purpose of "implement[ing] the waste disposal regulatory system to which registrants are subject"). For example, the proceeds from the stewardship payment cannot be diverted to cover the agency's costs of licensing opioid manufacturers and distributors; those costs are paid pursuant to a regulatory scheme funded by an entirely separate assessment authorized under

New York's Public Health Law. See N.Y. Pub. Health Law § 3310 (imposing a fee for a license to manufacture or distribute controlled substances in the State).

Consideration of the other two San Juan Cellular factors only reinforces the view that the opioid stewardship payment is a tax. "The first of these additional factors, the nature of the entity imposing the charge, cuts strongly in favor of classifying the [stewardship payment] as a tax." Entergy, 737 F.3d at 232. The payment was clearly imposed by the Legislature, which wields the taxing power, and not by a "limited-purpose" agency.[8] Id. The agency appears to have played little substantive role in imposing it.

The plaintiffs argue that the remaining factor cited in San Juan Cellular, the population subject to the charge, suggests that the stewardship payment is not a tax because it falls on a narrow set of only 97 companies. But this argument, like the plaintiff's failed argument in Entergy, is "too simplistic" insofar as it asks us to just tally the number of entities subject to an assessment. Id. at 233. With respect to this factor, our task is to consider whether "[t]he

---

[8] We note that the District Court mistakenly believed that the Department of Health imposed the payment. Special App'x 24. In fact, however, the Department of Health only collects the annual $100 million payment; the Legislature imposed the payment and determined how it would be apportioned among licensees. N.Y. Pub. Health Law § 3323(3), (5); see also Hedgepeth, 215 F.3d at 610, 612.

category of persons or entities subject to [a] tax[] is defined by general and open-ended criteria, even if only a few entities, or one entity alone, are subject to the tax." Id. When viewed properly in that light, the population subject to the stewardship payment consists of "[a]ll manufacturers and distributors . . . that sell or distribute opioids in the state of New York." N.Y. Pub. Health Law § 3323(2). So defined, the category is broad and general enough to qualify the payment at issue in this appeal as a tax.

II

A

Urging a contrary conclusion, the plaintiffs insist that the payment is a regulatory fee, not a tax, because the public health programs supported by the payment serve "not a general revenue-raising purpose" but a "narrow" and "specific one." HDA Br. 29 (emphases in original); see id. at 35 (contrasting purportedly "'narrow' industry-related programs funded by the opioid stewardship fund" with the "lengthy catalogue of general public health programs" funded by the New York cigarette excise tax). They claim that the specific purpose of the programs is to "defray[] . . . expenses associated with

regulating the opioid supply chain as well as . . . expenses for mitigating externalities associated with that supply chain." Id. at 30.

But the public health programs that the stewardship payment funds "relate directly to the general welfare of the citizens of [New York,] and the assessments to fund them are no less general revenue raising levies simply because they are dedicated to a particular aspect of the commonwealth." Hedgepeth, 215 F.3d at 613 (quotation marks omitted); see id. at 612–13 (holding that a disabled parking placard fee was a tax even though its proceeds went primarily to the state's highway fund). In New York, the statewide OASAS programs benefit the broader New York population through "prevention and education services," as well as New Yorkers struggling with opioid addiction. N.Y. State Fin. Law § 97-aaaaa(4). The prescription monitoring program registry similarly extends well beyond the opioid crisis to include several categories of non-opioid controlled substances that have debilitated countless New Yorkers. N.Y. Pub. Health Law § 3343-a(1), (2); id. § 3306.

Moreover, the assessment would be a tax even if it helped to alleviate only the social and other costs to New Yorkers caused by the sale and manufacture of opioids by the assessed entities. "[T]axes imposed on industries believed to

impose unusual costs on the state or its residents"—like the opioid manufacturers and distributors subject to the OSA—"are common, and are unquestionably taxes." Entergy, 737 F.3d at 233 n.2; see also Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1012 (5th Cir. 1998) (reasoning that a building permit fee imposed on residential builders was a tax because it raised revenue to maintain public services strained by rapid residential development).

Directing us to Entergy, the plaintiffs separately contend that the deposit of the opioid stewardship payment proceeds in a "special revenue" fund, rather than in New York's general fund, cuts strongly against recognizing the payment as a tax. They point to our assertion in Entergy that "[i]f the proceeds [of a measure] are deposited into the state's general fund (rather than directly allocated to the agency that administers the collection, for the purpose of providing a narrow benefit to or offsetting costs for the agency), the imposition will generally be seen as serving the general benefit of the state, and thus as a tax." Entergy, 737 F.3d at 231; see also Travelers, 14 F.3d at 713 (concluding that surcharges imposed on health insurers were taxes because they were "paid into the State's general fund").

21

But Entergy does not suggest the converse, namely, that depositing the proceeds of an assessment in a special fund invariably cuts against finding that the assessment is a tax. Determining whether proceeds are held in the general fund or a special revenue fund does not end our inquiry. In Entergy, we used a more functional approach, contrasting proceeds deposited in a State's general fund with those proceeds that are "directly allocated to the agency that administers the collection, for the purpose of providing a narrow benefit to or offsetting costs for the agency." Entergy, 737 F.3d at 231. In Valero Terrestrial Co. v. Caffrey, the Fourth Circuit adopted a similarly flexible, functional approach that considers whether revenue that "is placed in a special fund . . . is used to benefit regulated entities, . . . to defray the cost of regulation (making it resemble a 'fee') or else to benefit the general public." See 205 F.3d 130, 135 (4th Cir. 2000) (quotation marks omitted). In line with this approach, we consider the nature of the fund, and how the money in the fund is ultimately used, to determine if the fund holds the proceeds of a tax.

Recall that the proceeds from the opioid stewardship payment are deposited in a separate, "special revenue" account in the state treasury. See N.Y. State Fin. Law § 97-aaaaa(1). The New York State Finance Law defines "special

22

revenue funds" as "[f]unds which are used to account for the proceeds of specific sources that are specifically restricted by law from being deposited in the general fund of the state." See N.Y. State Fin. Law § 2. The Commissioner of the Department of Taxation and Finance and the Comptroller alone share custody over the account and exercise significant control over the funds in the opioid stewardship account. The proceeds are not "directly allocated" to any agency, let alone to the Department of Health, "the agency that administers the collection" of the stewardship payment. Entergy, 737 F.3d at 231. And any money that is paid out of the fund is used primarily to support the work of OASAS in its opioid-related public health initiatives for the benefit of the public at large. As noted, none of the funds from the account offset the Department of Health's regulatory costs or benefit regulated entities. The only Department of Health program that the funds can support is the prescription monitoring program registry.

We agree with a number of our sister circuits that "even assessments that are segregated from general revenues" may be taxes "under the TIA if expended to provide a general benefit to the public." Bidart Bros., 73 F.3d at 932 (quotation marks omitted); see also Hill, 478 F.3d at 1244–45; Am. Landfill, Inc. v.

23

_Stark/Tuscarawas/Wayne Joint Solid Waste Mgmt. Dist._, 166 F.3d 835, 839 (6th Cir. 1999) (holding that a solid waste disposal assessment was a tax because, although the proceeds were "placed in a fund . . . separate from the general fund, [they] serve[d] public purposes benefitting the entire community").  Indeed, any number of reasons might spur a legislature to place specific tax revenues in an account that is separate from the general fund.  The Seventh Circuit has said, for example, that separate accounts may be "created to hold revenues generated by specific taxes, in order to avoid annual appropriations battles."  _Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc._, 651 F.3d 722, 730 (7th Cir. 2011) (en banc).  In short, that the proceeds of the opioid stewardship payment are deposited in a special fund rather than the State's general fund in this case does not mean that the payment is a regulatory fee rather than a tax.

We now turn to the remaining _Entergy_ factors.  Although the designation to the general treasury of the tax in _Entergy_ was the "principal" characteristic supporting its status as a tax, _Entergy_, 737 F.3d at 233, we also observed that the statute imposing the tax (1) directed that its proceeds be paid to the

24

Commissioner of the Department of Taxes, (2) did not reserve its proceeds for any particular purpose, and (3) labeled it a "tax," id. at 231.

The plaintiffs claim that all three of these remaining factors weigh against recognizing the stewardship payment as a tax. The OSA, they point out, directs the payment to be paid to the Department of Health, not the Department of Taxation and Finance; it reserves the payment for a specific purpose; and it does not refer to the payment as a "tax."

While it is true that the Department of Health is tasked with collecting proceeds of the stewardship payment, the OSA requires that the proceeds be remitted to the special revenue fund jointly held by the State Comptroller and the Commissioner of Taxation and Finance. In other words, the funds are functionally and legally maintained by the State's taxing authorities, a fact that strongly favors New York's argument that the payment is a tax.

Nor is the payment a regulatory fee merely because the OSA reserves the proceeds to support public health programs in New York. Such a broad, statewide purpose is not "particular" in the way Entergy contemplates. To the

25

contrary, it constitutes precisely the kind of general public purpose that supports

New York's characterization of the payment as a tax.

As for the final factor, we recognize that the OSA does not call the

stewardship payment a "tax" per se. But "'[t]axation' is unpopular these days,

so taxing authorities avoid the term." Empress Casino, 651 F.3d at 730. It may

well be significant, sometimes even dispositive, that the legislature affirmatively

attaches the label "tax" to a required payment. But the legislature's silent refusal

to call a tax a tax, even though it raises revenue to provide a clear general public

benefit, is less significant to our inquiry.

For these reasons, we can safely conclude that the stewardship payment is

not a regulatory fee.

B

The plaintiffs' final argument, that the opioid stewardship payment is a

punitive fine, fares no better. In assessing the argument, we note that the

legislature is entitled to require an industry to pay a tax to support public

programs designed to address a widespread problem caused by the industry.

See Entergy, 737 F.3d at 233 n.2. Even if we assume, as the plaintiffs claim, that

the State Legislature here imposed the stewardship payment to hold opioid

manufacturers and distributors responsible for the "unusual costs" of the opioid epidemic, we would not construe it as a fine for that reason.  Id.

The plaintiffs also argue that the stewardship payment is a fine because it is a "fixed sum" of $100 million per year.  HDA Br. 38.  While fines are "typically" fixed sums, the plaintiffs say, taxes are "usually" calculated as a percentage of each sale.  HDA Br. 38.  But the TIA is not limited to taxes that a State assesses based on a "usual" method of calculation.  The statute broadly bars federal court interference with the "assessment, levy or collection of any tax."  28 U.S.C. § 1341 (emphasis added).  That language does not suggest that the method of assessment bears at all on the jurisdictional inquiry.  Likely for that reason, we have never proposed that the method of assessment is relevant to whether a state-imposed payment is a tax within the meaning of the TIA, and we decline to do so now.

The plaintiffs alternatively emphasize that the OSA's pass-through prohibition places the entire burden of the payment on manufacturers and distributors by barring them from passing the costs on to purchasers.  This, they contend, is a telltale feature of a punitive fine.  But the pass-through prohibition is a separate and distinct element of the OSA that New York no longer defends.

27

On appeal, therefore, our focus is entirely on the stewardship payment. And without the accompanying pass-through provision, the stewardship payment functions much like other tax burdens that a company can choose to pass on to its consumers through price increases. No other provision prevents the plaintiffs from passing on the costs of the payments levied against them.

GenOn Mid-Atlantic, LLC v. Montgomery County, 650 F.3d 1021 (4th Cir. 2011), to which the plaintiffs point us, is not to the contrary. There, the Fourth Circuit held that a county legislature's charge on carbon dioxide emissions was a punitive fee. In determining that the charge was a fee, the court relied in significant part on two facts: first, that the burden of the charge fell on the plaintiff "alone," and second, that GenOn, the electricity plant subject to the charge, would "likely be unable to pass the cost of the charge on to its customers" because it lacked the market power to do so. Id. at 1024. GenOn's inability to pass on the cost of the charge was critical to the county council's decision to impose the charge. See id. at 1025. Neither of these concerns are factors in this case. Here, the burden imposed by the stewardship payment is more generally borne. And because New York no longer defends the OSA's pass-through prohibition, nothing prevents the plaintiffs and other similarly

situated licensees from passing on the costs of the stewardship payment to their customers.

In summary, after considering the factors in <u>Entergy</u> and <u>San Juan Cellular</u>, we conclude that the primary purpose of the opioid stewardship payment is to raise revenue, not to punish or regulate the plaintiffs and other licensees who are required to make the payment. For this reason, we hold that the payment is a tax within the meaning of the TIA. The District Court therefore lacked jurisdiction to declare it invalid or to enjoin its enforcement.[9]

III

Because New York has "elected not to seek reversal of the district court's invalidation of the pass-through prohibition, and seeks reversal only of the district court's invalidation of the remainder of the OSA, including the opioid

---

[9] Having concluded that the TIA barred the District Court from enjoining the stewardship payment, we do not reach New York's alternative argument that the District Court should have abstained under the doctrine of tax comity. <u>See</u> <u>Joseph v. Hyman</u>, 659 F.3d 215, 218–19 (2d Cir. 2011) (explaining that the doctrine is "[m]ore embracive than the TIA because it restrains federal courts from hearing not only cases that decrease a state's revenue, but also those that risk disrupting state tax administration" (quotation marks omitted)).

stewardship payment," New York Br. 2–3, we need not further address the validity and severability of the prohibition.

CONCLUSION

For the foregoing reasons, we **REVERSE** the District Court's judgment invalidating and enjoining enforcement of the opioid stewardship payment and all other provisions of the OSA except for the pass-through prohibition, the invalidation of which is not before us.